FREDERICK B. IRVINE, Appellant, *v*. THE NEW YORK EDISON COMPANY, Respondent.

Corporations — merger of two corporations under section 15 of Stock Corporation Law — when possessor corporation not liable for debts of the merged corporation — rights of creditor of merged corporation.

1. In construing and applying a statute, it is the duty of the courts to enforce the provisions of the statute without reading into it affirmative provisions.

2. Where one corporation is acquired by and merged into another corporation under section 15 of the Stock Corporation Law (Cons.

Laws, ch. 59) and the latter has not contracted to pay the debts of the former, a creditor of the merged corporation cannot maintain against the possessor corporation an action to collect a debt due to him from the merged corporation, since there is no provision in such statute making the possessor corporation liable for the debts of the merged corporation.

3. When a corporation merged into another, under section 15 of the Stock Corporation Law, is indebted to a creditor, such creditor, under the provision that the merging of corporations shall be without prejudice to any liabilities of the merged corporation or the rights of any creditors thereof, is entitled to sue the debtor corporation and take the property which was of the debtor corporation by execution issued upon a judgment against such debtor. Such right rests upon the express terms of the statute and does not necessarily depend upon the existence, and a finding, of a fraudulent transfer.

4. If the property of the merged debtor corporation is not of such a nature that it can be reached directly by execution or otherwise, it constitutes a trust fund for the benefit of its creditors and can be reached as such precisely as if a merger of the debtor company had never taken place. When the creditor has exhausted his legal remedies he may invoke the aid of a court of equity and therein follow the equitable assets of the debtor corporation and appropriate its property by due process of law, including any property which has been changed or altered in its nature or character, provided the trust fund can be clearly ascertained, traced and identified.

*Irvine* v. *New York Edison Co.*, 143 App. Div. 344, affirmed.

(Argued January 31, 1913; decided February 25, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 25, 1911, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Martin S. Lynch* for appellant. The New York Edison Company is the successor of the Block Lighting and Power Company No. 1 and is liable for this indebtedness. (*Miner* v. *N. Y. C. & H. R. R. R. Co.*, 123 N. Y. 242;

*Bell* v. *C. C. & I. Co.*, 29 Misc. Rep. 109; *Klein* v. *E. R. E. L. Co.*, 37 Misc. Rep. 490; *Matter of Utica Nat. Brewing Co.*, 154 N. Y. 268.) At the time the cause of action of the plaintiff arose and became enforceable the Block Lighting and Power Company No. 1, the Manhattan Lighting Company and the New York Gas, Electric Light, Heat and Power Company had ceased to exist. (*Miner* v. *N. Y. C. & H. R. R. R. Co.*, 123 N. Y. 242; *Bell* v. *C. C. & I. Co.*, 29 Misc. Rep. 109.)

*Edward R. Hatch* for respondent. The evidence does not establish any liability on the part cf the defendant for the debts of the Block Lighting and Power Company, and, therefore, the plaintiff failed to prove his cause of action. (Cook on Corp. [6th ed.] § 673; *Fernschild* v. *Yuengling Brewing Company*, 15 App. Div. 29; 154 N. Y. 667; *Klein* v. *East River El. Light Co.*, 182 N. Y. 27; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 183; *Swarthout* v. *Ranier*, 143 N. Y. 499; *Dunlevy* v. *Talmadge*, 32 N. Y. 457; *Adee* v. *Bigler*, 81 N. Y. 349; *Rocky Mountain Nat. Bank* v. *Bliss*, 89 N. Y. 338; *McNeil* v. *Hayes Machine Co.*, 118 App. Div. 130; *Trotter* v. *Lisman*, 199 N. Y. 497; *Hurd* v. *Steam Laundry Co.*, 167 N. Y. 89; *Darcy* v. *Brooklyn & N. Y. Ferry Co.*, 196 N. Y. 99; *Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S. 371.)

CHASE, J. The Block Lighting and Power Company, No. 1, transferred its property, real and personal, including its franchises, by bill of sale to the Manhattan Lighting Company on December 13, 1898. The consideration of such transfer does not appear. The Block Company and the Manhattan Company were merged into and with the New York Gas and Electric Light, Heat and Power Company on February 1, 1900. The gas company and the Edison Electric Illuminating Company of New York were consolidated and became the defendant, The New

York Edison Company, on May 20, 1901. The transactions mentioned were each independent acts, not having so far as appears any relation to one another. The plaintiff's claim is against the Block Company. The assets, if any, of the Block Company are in the possession of the defendant, expressly subject, as will hereinafter appear, to the rights of the creditors of the Block Company.

The question in this case is reduced to a consideration of the plaintiff's remedy. Can the plaintiff maintain this action as one of debt against the defendant? I think not, and I concur in the opinion written by Justice McLAUGHLIN in the court below.

The legislature has provided two ways of uniting two or more corporations by transfer of their property to a single corporation. One statute provides that "Any two or more corporations organized under the laws of this state for the purpose of carrying on any kind of business of the same or of a similar nature" which a corporation organized under the Business Corporations Law might carry on, may consolidate such corporations into a single corporation. (Business Corporations Law, § 7 [Cons. Laws, ch. 4]. See, also, §§ 7 to 11 inclusive; former Business Corporations Law [Laws of 1890, chap. 567], §§ 8 to 12 inclusive, as amended prior to 1909.)

Another statute provides that "Any domestic stock corporation and any foreign stock corporation authorized to do business in this state lawfully owning all the stock of any other stock corporation organized for, or engaged in business similar or incidental to that of the possessor corporation may file in the office of the secretary of state, under its common seal, a certificate of such ownership, and of the resolution of its board of directors to merge such other corporation, and thereupon it shall acquire and become, and be possessed of all the estate, property, rights, privileges and franchises of such other corporation, and they shall vest in and be held and enjoyed by it as fully and entirely and without change

or diminution as the same were before held and enjoyed by such other corporation, and be manged and controlled by the board of directors of such possessor corporation, and in its name, but without prejudice to any liabilities of such other corporation or the rights of any creditors thereof. * * *" (Stock Corporation Law, § 15 [Cons. Laws, ch. 59]; former Stock Corporation Law [Laws of 1890, chap. 564], § 58, as amended prior to 1909.)

It is also provided in the Transportation Corporations Law (Laws of 1909, chap. 219, § 61, subd. 3 [Cons. Laws, ch. 63]) that "subject to the permission and approval of the proper public service commission, any two or more corporations organized under this article or under any general or special law of the state for the purpose of carrying on any business which a corporation organized under this article might carry on, may consolidate such corporations into a single corporation, and any such corporation may with the like permission and approval be merged with any other such corporation, upon complying with the provisions of the Business Corporations Law relating to the consolidation of business corporations and the Stock Corporation Law relating to the merger of stock corporations."

The Transportation Corporations Law thus expressly recognizes the right of corporations to consolidate under the Business Corporations Law, and also to merge under the Stock Corporation Law. Each form of procedure is independent of the other. Where a consolidation is consummated pursuant to the statute it is expressly provided that the rights of creditors of any corporation that shall be so consolidated shall not in any manner be impaired, and also "such new corporation shall succeed to and be held liable to pay and discharge all such debts and liabilities of each of the corporations consolidated in the same manner as if such new corporation had itself incurred the obligation or liability to pay such debt or damages." (Cons. Laws, ch. 4, § 11.)

If the gas company was liable for the indebtedness to the plaintiff described in the complaint, the action will lie against the defendant therefor because of the statute quoted. Whether the gas company became liable for the debts of the Block Company depends upon the statute, pursuant to which the merger took place. In the statute authorizing a merger of corporations, there is no provision making the possessor corporation liable for the debts of the corporation merged. It is expressly provided in that statute that the merging of corporations shall be "without prejudice to any liabilities of such other corporation or the rights of any creditors thereof."

This reservation of the rights of creditors permits them to proceed against the debtor corporation, notwithstanding such corporation is merged into another. The rights of creditors include the right to sue the debtor corporation and to take the property which was of the debtor corporation by execution issued upon a judgment obtained against such debtor. Such right rests upon the express terms of the statute and does not necessarily depend, as has been suggested, upon the existence and a finding of a fraudulent transfer.

This court has recently considered the effect of a merger of banking corporations. (*Matter of Bergdorf*, 206 N. Y. 309.) Upon a merger of banking corporations (Banking Law [Cons. Laws, ch. 2], §§ 36 to 40 inclusive) it is expressly provided that the corporation into which they are merged shall "be held liable to pay and discharge all such debts and liabilities, and to perform all such trusts of the merged corporation in the same manner as if such corporation into which the other shall become merged had itself incurred the obligation or liability." But it is provided by the statute that no "action or other proceeding then pending before any court or tribunal in which any corporation that may be merged is a party shall be deemed to have abated or discontinued by reason of any such merger, but the same may be prosecuted to final judgment

in the same manner as if the said corporation had not entered into the said agreement."

This court, in considering the effect of a merger in the *Bergdorf* case, say: "It could not have taken place without statutory authority and the legislature *fixed the indisputable and exclusive effects of it.* (*People* v. *N. Y., Chicago & St. Louis R. R. Co.*, 129 N. Y. 474.)"

Referring again to the statutory provisions under which the merger was consummated, the court further say: "Those statutory provisions state plainly the effects of the merger of the Morton Company into the Guaranty Company. The former company became (with the nominal exception hereinafter stated) rightless, propertyless and powerless; and the latter company was enlarged by the absorption of all that the former surrendered. * * * But the Morton Company did not surrender its corporate existence. It was not dissolved. It remained a corporation, but for the single purpose and with the sole power of being sued or proceeded against upon and defending against causes of action alleged to exist against it at the time of the merger. All the other powers bestowed upon it and which were evidenced by its certificate of incorporation and the statute law relating to it were by the merger transferred to the Guaranty Company. A corporation may exist though it possesses no property. A corporation may have a partial as well as a total extinction, and a legislature may enact that the merged corporation shall be extinguished by the merger, except in so far as the statute shall keep it nominally alive for a specified purpose. Our conclusion is that the Morton Trust Company does not exist within or as a part of the Guaranty Company, and the two are not identical. As a legal being, a corporate entity, it retained the one activity and power, and otherwise is non-existent." (p. 315.)

The language of the court in the *Bergdorf* case is applicable to this case. The Block Company never existed within the gas company, and does not exist within or as

a part of the defendant.    Although the Block Company
has become extinct, its corporate existence is retained for
the one purpose of carrying out in good faith the reserva-
tion in the statute of the rights of the creditors thereof.
We repeat that for that purpose the Block Company can
be sued.    The plaintiff after obtaining judgment against
the Block Company may, by execution or otherwise, reach
the assets of such company as though the merger had
never taken place.

The provisions of the merger statute and of the con-
solidation statute were considered together by the legis-
lature in 1890, and they have since been considered by it
from time to time.    There would seem to be little or no
objection and much reason for making a corporation
which takes all of the assets of other corporations by con-
solidation or merger liable for the indebtedness of such
consolidated or merged corporations.    The acceptance of
such property could be made an assent to such liability.
The whole matter was, however, clearly before the legis-
lature for its consideration, and it was considered by it,
and it made a corporation accepting the assets of other
corporations under the statute authorizing the consolida-
tion of corporations liable for the indebtedness of the cor-
porations so consolidated.    It declined so to do in the case
of corporations transferring assets under the merger stat-
ute.    The rights of creditors were not overlooked, as the
legislature expressly provided that the rights of such
creditors should be preserved and that the merger should
be without prejudice as to them.

In view of the history of the acts referred to it must be
assumed that the omission to make the possessor company
directly liable for the debts of the merged corporations
was intentional.    The courts should not attempt to sup-
plement the legislative provision relating to the creditors
of the merged corporations by making the possessor com-
pany liable as upon contract for the indebtedness of such
companies, either wholly or to the extent of the property

transferred to it, particularly in view of the fact that it appears that the subject has been fully considered and acted upon by the legislature itself.

The reservation by the legislature of the rights of creditors negatives the suggestion that a transfer in pursuance of the statute would be a crime. Such a transfer is not one made "with intent to defraud prior or subsequent purchasers, or to hinder, delay or defraud creditors or other persons" within the meaning of section 1170 of the Code of Criminal Procedure.

If the property of the Block Company is not of such a nature that it can be reached directly by execution or otherwise, it constitutes a trust fund for the benefit of such creditors and can be reached as such precisely as if a merger of the Block Company had never taken place.

The rule in equity is that as between *cestui que trust* and trustee, and all parties claiming under the trustee otherwise than by purchase for a valuable consideration, without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or altered state, continues to be subject to or affected by the trust. (*Matter of Hicks*, 170 N. Y. 195.)

A creditor of a corporation has the right to follow the assets of a corporation and appropriate the property by due process of law, including any property which has been changed, provided the trust fund can be clearly ascertained, traced and identified. (*Matter of Hicks, supra.*)

In my view the objection to sustaining the action now before us may be summarized by stating that the defendant has never contracted directly or by inference to pay the debts of the Block Company; and the statute, which is the authority for the transfer of the property, if any, from the Block Company to the gas company, does not provide that the possessor company shall assume the indebtedness of the merged company, but expressly pro-

28

vides that the rights of creditors of the merged company are preserved. The statute was not carelessly drawn and the omission to make the possessor company liable for the debts of the merged company was not an oversight.

It is the duty of the court to enforce the provisions of the statute without reading into it affirmative provisions.

The plaintiff does not claim to recover in equity, but if he did he would be required to first take other steps preliminary thereto.

This court in *Trotter* v. *Lisman* (199 N. Y. 497) held that creditors seeking the aid of a court of equity to reach equitable assets of their debtor in satisfaction of their claims must first exhaust their legal remedies, according to the laws of this state, by the recovery of a judgment in one of its courts and the return of execution thereon unsatisfied, unless there are facts constituting a sufficient excuse for the failure so to do, which facts must be set forth in the complaint.

The statements of the courts of other states have but little value in determining the question now before us because they are based upon the particular facts or statutes there under consideration. In *Indianapolis, C. & L. R. R. Co.* v. *Jones* (29 Ind. 465) the conclusion of the court was reached after holding that under the statutes then under consideration the consolidated companies had so passed out of existence that they could not be sued by the creditors of such corporations; and after the further holding that the consolidated companies continued to exist in the new company and that as a matter of necessity the old companies could be sued in the name of the new company. The reasons for the conclusion in that case do not exist in the case now before us.

There is nothing that was said by this court in *Polhemus* v. *Fitchburg R. R. Co.* (123 N. Y. 502, 508) that aids the appellant. The court there simply held that the words "except mortgages," in the statute therein referred

to, did not include the bonded indebtedness of which the mortgage was a collateral security, and referring to the words quoted, said: "They are ill calculated to express anything in the legal sense, for mortgages mean the instruments which charge property with the liability to make good the debt its owner has contracted. They may be said to describe a property liability, but never to describe the principal debt or promise, which is evidenced by the promissory note, or bond of the property owner. They are collateral, or incident to the debt itself, and where made, as here, to secure the payment of bonds, they cannot properly be termed the debt or liability of the obligor, but only the liability charged upon his property."

The defendant has never contracted to pay the plaintiff's debt, and has never been made liable therefor by statute.

The judgment should be affirmed, with costs.

CULLEN, Ch. J. (dissenting). This action was brought by the assignee of an accommodation indorser of the Block Lighting and Power Company to recover of the defendant the amount the indorser had been obliged to pay in taking up such note, on the ground, as alleged in the complaint, that the defendant corporation "had assigned and transferred to it and become possessed of all the assets and became liable for all the debts and obligations of the Block Lighting and Power Company." On the trial it was proved that the Block Lighting and Power Company had transferred all its property to the Manhattan Lighting Company; that subsequently these two companies were merged, under the provisions of section 58 of the Stock Corporation Law (now section 15 of the Consolidated Stock Corporation Law), in the New York Gas and Electric Light, Heat and Power Company, which had become the owner of all the capital stock of the two constituent companies, and that thereafter the latter

company and the Edison Electric Illuminating Company of New York were consolidated so as to form the defendant, the New York Edison Company. At the close of the plaintiff's case the complaint was dismissed. This judgment was affirmed at the Appellate Division and an appeal has been taken to this court.

The evidence on behalf of the plaintiff established a *prima facie* case of liability against the Block Lighting and Power Company, and as the complaint was dismissed at the close of the plaintiff's case, the only question before us is whether the facts proven tend to show any liability on the part of the defendant for the debts or obligations of that company. It may be that the allegations of the complaint that the defendant had become liable for the debts of the Block Company were so indefinite as to render the complaint subject to demurrer, but as no objection was taken on that ground, the question before us is as to the sufficiency, not of the allegations of the complaint, but of the proofs adduced by the plaintiff to establish such liability.

It is true, as urged by the respondent, that the acquisition by the Manhattan Lighting Company of the property and franchise of the Block Company of itself imposed no liability upon the former company to discharge the debts and liabilities of the latter, and it may also be, as contended, that the presumption is, there being no evidence or proof to the contrary, that the Manhattan Company paid the Block Company full consideration for the property bought and that the sale was *bona fide.* I do not see, however, how the determination of those questions is at all material to the disposition of the case. Both vendor and vendee were merged into the New York Gas and Electric Light, Heat and Power Company, and the responsibility of the new corporation for the liabilities or obligations of the merged corporations, if any, was just as great for those of one company as for those of the other. It is argued on behalf of the respondent that the

new corporation received nothing from the Block Company, because the Block Company had already transferred all its property to the Manhattan Company. There seems to be some inconsistency between this contention and the claim that presumptively the Manhattan Company paid the Block Company the full value of the property purchased. If that presumption obtains, the Block Company must have had the purchase price which it received from the Manhattan Company, unless it was expended in the payment of debts or lost in the conduct of the business, of neither of which facts does the record contain any proof or suggestion.

The merger of these companies was effected under section 58 of the Stock Corporation Law (L. 1890, ch. 564, as amended; now section 15 of Consolidated Stock Corporation Law), which will be quoted hereafter. The consolidation of the New York Gas and Electric Light, Heat and Power Company with the Edison Electric Illuminating Company, by which the defendant was created, was effected under a different statute — section 61, subd. 3 of the Transportation Corporations Law (L. 1890, ch. 566), and sections 8 to 12 of the Business Corporations Law (L. 1890, ch. 567, as amended). Those statutes provide in express terms that the new corporation shall be liable for all the debts and liabilities of the corporations consolidated. There is no question, therefore, that the defendant has assumed all the liabilities of the New York Gas and Electric Light, Heat and Power Company, whatever they were, and the question in the case is whether under the merger statute, the last-named company became responsible for the debts and liabilities of the Block Company, and if so, to what extent. That statute is as follows:

" Any domestic stock corporation and any foreign stock corporation authorized to do business in this state lawfully owning all the stock of any other stock corporation organized for, or engaged in business similar or inci-

dental to that of the possessor corporation may file in the office of the secretary of state, under its common seal, a certificate of such ownership, and of the resolution of its board of directors to merge such other corporation, and thereupon it shall acquire and become, and be possessed of all the estate, property, rights, privileges and franchises of such other corporation, and they shall vest in and be held and enjoyed by it as fully and entirely and without change or diminution as the same were before held and enjoyed by such other corporation, and be managed and controlled by the board of directors of such possessor corporation, and in its name, but without prejudice to any liabilities of such other corporation or the rights of any creditors thereof." (Cons. Laws, ch. 59, section 15.)

There is no express provision that the new company shall be liable for the debts of the old, nor is there any express provision as to the fate of the merged corporations, whether on the merger they cease to exist or not. The only provision is that the merger shall be without prejudice to the liabilities of the corporations merged or the rights of the creditors thereof. I am inclined to the view that in the absence of any provision to that effect in the statute the new corporation does not become absolutely and unqualifiedly liable to the debts and obligations of the old ones, though I reach this conclusion rather unwillingly under the stress of authority, and there are some very respectable decisions to the contrary. (*Berry* v. *K. C., F. S. & M. R. R. Co.*, 52 Kan. 759, 774; *Cleveland, C., C. & St. L. Ry. Co.* v. *Prewitt*, 134 Ind. 557; *Shadford* v. *Detroit, Y. & A. A. Railway*, 130 Mich. 300.) But it by no means follows that the new corporation is under no liability in the premises. On the contrary, it is absolutely clear that it does incur liability, to be enforced in one way or another, to the extent of the assets it may have received from the constituent corporations. The proposition that the stock of a corporation is to be regarded as a trust fund for

the payment of its debts, and that the creditors of the corporation have priority over stockholders in the payment of their debts, is too firmly settled in our law to be the subject of debate. (*Bartlett* v. *Drew,* 57 N. Y. 587; *Cole* v. *Millerton Iron Co.,* 133 id. 164; *Hurd* v. *N. Y. & C. Steam Laundry Co.,* 167 id. 89; *Darcy* v. *Brooklyn & N. Y. Ferry Co.,* 196 id. 99.) Indeed, it is substantially the universal doctrine in this country. (*Wabash, St. L. & P. R. Co.* v. *Ham,* 114 U. S. 587; *Chicago, M. & St. P. Ry. Co.* v. *Third Nat. Bank,* 134 id. 276, 287; Cook on Corporations, section 9.) The doctrine has at times been stated in such broad language as would seem to import that the creditors have a specific lien on the property. The use of the term "lien" is probably an inadvertence, and it has generally been held that the creditors have not such a lien, and that on a merger or consolidation, the property of the constituent companies is subject to the same freedom of honest disposition by the new company as it was in the hands of the original companies. (*Wabash, St. L. & P. R. Co.* v. *Ham, supra.*) But this is the only criticism or qualification that is made on the doctrine.

Nor could the legislature relieve the new company from such liability, at least as to creditors existing at the time of the enactment of the statute; for to permit a debtor company to divide its property among its stockholders to the exclusion of the creditors would as clearly impair the obligation of contracts in contravention of the Federal Constitution, as statutes exempting the property of a debtor from liability for his debts, which have been condemned by the Supreme Court of the United States. (*Gunn* v. *Barry,* 15 Wall. 610; *Edwards* v. *Kearzey,* 96 U. S. 595; *Memphis* v. *U. S.,* 97 id. 293.)

Therefore, on final analysis, the question in this case is reduced to one of remedy. Is the creditor bound to recover a judgment against the old corporation — if it exists after the merger, which is doubtful — and then

proceed against the new corporation as a fraudulent grantee, or can it proceed directly against the new company? If the first is to be the answer to the question, then we must hold that the legislature simply authorized fraudulent transfers of property — acts which if done by individuals would, under the Penal Law, constitute a crime. (Penal Law, sec. 1170; formerly Penal Code, sec. 596.) It may also be questioned whether if the new company is made liable only as a fraudulent grantee, and not as having assumed any obligation to pay, a merger under the statute before us would not, in the case of any corporation owing debts, constitute an act of bankruptcy under section 3a of the Federal act, for it strips the debtor of all its property and certainly hinders and delays creditors. In providing for mergers the statute necessarily contemplates going corporations, and we must take notice that ordinarily going corporations, like individuals or partnerships engaged in active business, have at least current debts and obligations. I think it would be most unnatural to ascribe to the legislature an intent to authorize fraudulent dispositions of property, or to subject every creditor of a corporation to the delay and expense of a creditor's suit for the collection of even petty debts, or to trust to the generosity and good nature of the new corporation to voluntarily pay such debts. Surely such a result would prejudice the rights of the creditors, while the statute expressly provides that the merger shall be without prejudice to any liabilities of the corporations merged or the rights of any creditors thereof. Some effect should be given to this language. The provision was not necessary to protect the rights of creditors to enforce their claims through creditors' bills. As already said, the legislature could not destroy those rights. I think it was plainly intended to impose some obligation on the new corporation, and the least extent of that obligation is the value of the property transferred. If there be this statutory obliga-

1913.]      Dissenting opinion, per CULLEN, Ch. J.      [207 N. Y.]

tion, then the new corporation may be sued directly on that obligation, though doubtless a creditor might at his option follow the property of his original debtor. It matters not whether the direct action be called one at law or in equity. (*Bartlett* v. *Drew*, 57 N. Y. 587.)

A very well-considered decision to this effect, made by the United States Circuit Court, will be found in *Hibernia Ins. Co.* v. *St. L. & N. O. Transp. Co.* (13 Fed. Rep. 516). In that case the statute made no provision as to the debts of the merging companies, and the question was left open by the court whether the new company could be permitted to show by way of defense that it had paid debts against the old company equal to the value of its property. In the view that I have taken of the obligation imposed by statute, such a defense would be available, but I think with the Federal court that the burden should be on the defendant to establish the facts constituting the defense and not on the plaintiff to show the contrary. Presumptively each of the merged corporations had property of some value, whether tangible property or franchises. Otherwise, there would be no sense in the merger. The insolvency of one of the corporations would be no defense to a creditor's claim, unless the new corporation had paid out as much as or more than the value of the property it had received. If this were not so, the fact that there was not property sufficient to pay all the debts of the old corporation would relieve the new corporation from paying any debt. These facts — what was the value of the property received by the new corporation, and what debts it had paid — would be within the exclusive knowledge of the defendant, not of the plaintiff, and on the former should rest the burden of proof. The Supreme Court of Indiana has also held that upon the consolidation of two corporations where there was no statutory provision on the subject, a suit might be maintained directly against the new company on a liability of one of the old corporations. It was there said: "This

doctrine seems to spring from the necessities of justice, and, so far as we are able to foresee, cannot result in wrong or embarrassment." (*Indianapolis, C. & L. R. R. Co.* v. *Jones*, 29 Ind. 465.) The disposition of the courts to hold a consolidated company liable for the obligations of the constituent companies is well shown by the decision of our own court in *Polhemus* v. *Fitchburg R. R. Co.* (123 N. Y. 502). There the statute provided that the debts and liabilities of the consolidated corporations "except mortgages" should attach to the new corporation. It was held that "mortgages" did not include the bonds secured by a mortgage, and that a suit might be maintained against the new corporation on the mortgage bonds of the old. Judge Gray said: "Shall we ascribe to the legislature a purpose to benefit stockholders at the expense of bondholders; practically, to give an advantage to the debtor over his creditor? The inequity and, as well, the iniquity of the thing seem most apparent. Except in bankruptcy courts, the secured creditor is never obliged to resort to his security in the first order, or to surrender it if he wishes to come in and claim with other creditors." (p. 511.) In *Anthony* v. *American Glucose Co.* (146 N. Y. 407) it was held that where a new corporation had been organized by a transfer to it of the property of certain original corporations by an agreement among the corporators by which the stock of the new corporation was appportioned among the stockholders of the original corporations, an action could be maintained against the new corporation, and that such stockholders would not be turned over for relief against the original corporations after their functions had ceased, although they might not be wholly dead. It was said: "There are two theories of the facts of this case: one technically true but substantially an error; the other really true but formally open to criticism; and upon our choice between them will be quite certain to depend the ultimate conclusion.   *   *   *   We have of late refused to be always

and utterly trammeled by the logic derived from corporate existence where it only serves to distort or hide the truth, and I think we should not hesitate in this case to reject the purely technical defense attempted." (p. 412.)

In answer to the opinion of my brother CHASE that the right of the creditor to sue the debtor corporation and take the property on execution rests upon the provision of the statute, that the merger should be "without prejudice to any liabilities of such other corporation. or the rights of any creditors thereof," I repeat that as to creditors existing at the time of the enactment of the merger statute, such right did not depend at all on the statute, that if the statute had provided exactly to the contrary, those creditors could still have enforced their claims against the property of the merging corporation, unless it had been transferred to some *bona fide* holder for value, and if it had been so disposed of, then against the new corporation which had so disposed of it to the extent of its value. This because such right of the creditor is protected by the Constitution of the United States that no state shall pass any law impairing the obligation of a contract. The Supreme Court of the United States in the cases I have cited has held that a state law exempting the property of a debtor from seizure to satisfy the claims of his creditors existing at the time of the enactment of the statute is a violation of those provisions of the Constitution, and, therefore, void. I am not prepared to assert that as to subsequent creditors a provision that thenceforth the property of any corporation should not be liable for its debts if the legislature should see fit to authorize the corporation to transfer its property to its stockholders, would be unconstitutional. It might be said that the loss of their claims was due to the folly of the creditors in extending credit to corporations with such a statutory provision staring them in the face. If, however, the court should assume that position it would be destructive of the whole fabric of the present mercantile credit.

But whatever may be said of a provision of that character, the legislation before us contemplated and authorized the immediate merger of existing corporations with existing outstanding obligations, and as to such cases the provision of the statute, construed as it is sought to be construed, did not vary the rights of creditors one iota.

Under the construction about to be adopted by the court, the only manner in which a clerk, a mechanic, a·day laborer or the humblest employee of any kind can enforce his week's pay or wages is to sue the original company, recover a judgment, find out if he can what tangible property (because an execution can be levied only on tangible property) the new company has received from the old company, issue an execution, indemnify the sheriff for levying on such property, and fight a second law suit through the courts. But if he cannot find such property, or if the property transferred is intangible, such as choses in action, he must file a creditor's bill and prosecute another action through the courts. His claim might be only $5, which ordinarily he could speedily collect by suit in any Justice's Court. As a rule the holders of small claims could not afford to carry through an expensive litigation, and as to them a restriction to such a procedure amounts to a denial of justice. True the new corporation might pay without putting the claimant to this trouble, but if so, it would not be because, as it is sought to hold, the company had assumed any obligation to pay, but solely of its magnanimity and bounty.

I have assumed that the old corporation would continue in existence after the merger — an assumption, however, that is not certain. It is entirely competent for the legislature to abolish every corporate existence that has come into being since 1846, even if it has creditors, but what it cannot do is to exempt the property of the corporation from the claims of its creditors. The case of *Matter of Bergdorf* (206 N. Y. 309) is not in

point. That consolidation was under another statute (Banking Law, sec. 36), but as far as applicable it is an authority for the proposition that the merging corporation is dead. In that case the statute not only provided the effect of the merger very much the same as in the one before us, that every species of property of the merging company should be transferred to the corporation into which it was merged, but further that no suit against the merging corporation should be deemed abated by reason of the merger, but might be prosecuted to final judgment in the same manner as if it had not been merged. It was claimed in that case that the merging company still existed. This court held to the contrary that it continued in but one single respect, that declared by the statute and already mentioned. In *Cameron* v. *United Traction Co.* (67 App. Div. 557) it was held that after a consolidation an action could not be brought against one of the constitutent companies, though under the terms of the statute had the action been pending at that time it could have been prosecuted to final judgment. There is no provision in the statute before us authorizing the continued prosecution of suits against a merging company. It is also very doubtful whether after the lapse of a short time there were any officers of the merging company on whom process could be served. The statute contemplates no need for officers, for it provides, not that the directors of the new corporation shall be directors of the old corporation, but that the management and control of the property of the old corporation shall be by the board of directors of the new corporation and in the name of the new company. If the directors of the old corporation resigned or their terms expired, on whom would process be served? (See *Cameron Case, supra.*) The merger of the Block Company was over seven years prior to the commencement of this action.

But if my brother be correct in the position that the

right of the creditor rests on the statute, not on the theory that the transfer of the assets is a fraud on the creditor, why adopt a course of procedure that only prevails as against fraudulent debtors? The statute provides no particular method in which claims of creditors may be enforced. Why adopt one most onerous and often fatal to creditors?

GRAY, COLLIN and CUDDERBACK, JJ., concur with CHASE, J.; WERNER, J., concurs with CULLEN, Ch. J.; MILLER, J., not sitting.

Judgment affirmed.