516

Francois Ducasse, Respondent, Appellant, *v.* American Yellow Taxi Operators, Inc., and Another, Defendants, Impleaded with Yellow Taxi Corporation, New York, Appellant, Respondent.

Second Department, October 19, 1928.

*Lee, Smyth & Wise* [*Warren I. Lee* and *Nathan A. Smyth* of counsel], for the plaintiff.

*Parker & Aaron* [*Charles Adkins Baker* of counsel], for the defendant Yellow Taxi Corporation, New York.

Judgment unanimously affirmed, with costs, on opinion of Honorable ABEL E. BLACKMAR, Referee.

Present — LAZANSKY, P. J., KAPPER, SEEGER, CARSWELL and SCUDDER, JJ.

The following is the opinion of the referee:

BLACKMAR, Referee. On the 4th of May, 1922, a contract was made between the plaintiff's assignor, the American Taximeter Company, therein called the lessor, and the defendant, the American Yellow Taxi Operators, Inc., therein called the lessee. The contract provided that the lessor rented to the lessee and the lessee hired from the lessor 250 Popp taximeters at a rental of five dollars per month for each taximeter for a period of five years beginning the 4th of May, 1922. The taximeters were to be attached to taxicabs operated in the city of New York. It was further agreed that the lessee should hire and the lessor should rent to the lessee, from time to time during the term of the contract, and upon the same terms, taximeters in excess of 250 for installation on such additional taxicabs as the lessee should from time to time operate in the city of New York, and that the lessee should equip all its cabs with the lessor's taximeters and use no other taximeters on any of its cabs.

The parties proceeded under this contract until the 21st of July, 1922, when the lessee, the American Yellow Taxi Operators, Inc., was, pursuant to law, merged into the defendant Yellow Taxi Corporation. The possessor corporation continued to use the Popp taximeters in its cabs and increased the number in use to 535. On July 20, 1923, the defendant Yellow Taxi Corporation returned 18 taximeters to plaintiff's assignor, who acknowledged receipt of them in a letter which reads in part as follows:

" We have no other use for these meters at this time, and will hold them subject to your further instructions.

" We do not understand that our contract would entitle you to the credit for which you ask, inasmuch as that contract provides for the use by your company of Richard Popp taximeters exclusively, for a period of five years from its date."

Nevertheless the defendants continued from time to time to return the meters to plaintiff's assignor until February, 1924, when all

were returned. The plaintiff's assignor acknowledged the receipt of those returned in letters containing the clause above quoted.

Meanwhile, on November 9, 1923, the defendant the Yellow Taxi Corporation was, pursuant to the statutes, merged into the defendant the Yellow Taxi Corporation, New York.

All these defendants used the taximeters of the plaintiff's assignor, the American Yellow Taxi Operators, Inc., hereinafter called the first defendant, from May 4, 1922, until July 21, 1922, the Yellow Taxi Corporation, hereinafter called the second defendant, from July 21, 1922, until November 9, 1923, and the Yellow Taxi Corporation, New York, hereinafter called the third defendant, from November 9, 1923, until the return of all the taximeters in February, 1924.

Meanwhile also, the defendants, as they returned the Popp taximeters, were supplanting them with others, and were increasing the number of cabs operated by them far beyond the 535 which had been equipped with Popp taximeters.

On July 17, 1925, the plaintiff, having received an assignment of its claim against the defendants from the American Taximeter Company, brought this action for the recovery of rental earned and for damages for breach of contract, stated in four causes of action. The defendants answered denying all liability.

At the threshold of the case there lies the question of the effect of the merger of the first into the second defendant corporation on July 21, 1922. The plaintiff claims that the contract with its rights and obligations thereupon became vested in the second defendant, which thereupon became directly liable to plaintiff's assignor for the performance of the contract as though it were a party thereto. The defendants claim that the obligations of the contract remained on the merged company, and the possessor corporation in using the meters was acting on behalf of the merged company. To support this contention they cite *Irvine* v. *New York Edison Company* (207 N. Y. 425).

In that case the merger was effected under section 15 of the former Stock Corporation Law of 1909 which provides as follows: " and thereupon it [*i. e.*, the possessor corporation] shall acquire and become, and be possessed of all the estate, property, rights, privileges and franchises of such other corporation, and they shall vest in and be held and enjoyed by it as fully and entirely and without change or diminution as the same were before held and enjoyed by such other corporation, and be managed and controlled by the board of directors of such possessor corporation, and in its name, but without prejudice to any liabilities of such other corporation or the rights of any creditors thereof."

The decision in the *Irvine* case rested on the concluding words:

" but without prejudice to any liabilities of such other corporation or the rights of any creditors thereof." The decision was that the possessor corporation was not liable for the debts of the merged corporation which existed at the time of the merger, but that such corporation was kept alive for the purpose of answering to its liabilities and debts, and that a creditor, on recovering judgment against the merged corporation, might follow its assets into the possessor corporation. In the *Irvine* case the action was brought to recover upon a note made by the merged company and due before the date of the merger. It was, therefore, a liability of such merged corporation which existed at the time of the merger. The fact that the plaintiff acquired the right to recover on the note by subrogation after the merger is unimportant.

I read the *Irvine* case as deciding only that the right of creditors of the merged company must be enforced by actions against that corporation which is kept alive for that purpose only. Nowhere has it ever been held that the possessor corporation can take the benefits of an executory bilateral contract and leave the liabilities to a " defunct, propertyless and lifeless corporation " which has no existence except for the sole purpose of being sued upon and defending against causes of action alleged to exist against it at the time of the merger. The status of the merged corporation is described by the Court of Appeals in *Matter of Bergdorf* (206 N. Y. 309, 315) as follows: " Those statutory provisions state plainly the effects of the merger of the Morton Company into the Guaranty Company. The former company became (with the nominal exception hereinafter stated) rightless, propertyless and powerless; and the latter company was enlarged by the absorption of all that the former surrendered. The former disburdened itself of each and every obligation, undertaking and relation, and the Guaranty Company absorbed and assumed them all. The Guaranty Company was authorized to issue new shares of stock in favor of the stockholders of the Morton Company in lieu of the shares of the latter surrendered and canceled. But the Morton Company did not surrender its corporate existence. It was not dissolved. It remained a corporation, but for the single purpose and with the sole power of being sued or proceeded against upon and defending against causes of action alleged to exist against it at the time of the merger. All the other powers bestowed upon it and which were evidenced by its certificate of incorporation and the statute law relating to it were by the merger transferred to the Guaranty Company. A corporation may exist though it possesses no property. A corporation may have a partial as well as a total extinction, and a Legislature may enact that the merged corporation shall be extinguished by the merger,

except in so far as the statute shall keep it nominally alive for a specified purpose. Our conclusion is that the Morton Trust Company does not exist within or as a part of the Guaranty Company, and the two are not identical. As a legal being, a corporate entity, it retained the one activity and power, and otherwise is non-existent."

The statute under which the merger under consideration took place provides " and thereupon it [i. e., the possessor corporation] shall acquire and become, and be possessed of all the estate, property rights, privileges and franchises of such other corporation." All contracts are made subject to this provision of law, and the contract between the plaintiff's assignor and the first defendant, which is property, was by the merger acquired by the possessor corporation, the second defendant. That corporation, therefore, had the right under the contract to use the Popp taximeters and to call on plaintiff's assignor to install them in all taxicabs which it might operate in the city of New York during the term of the contract. I cannot acquiesce on the proposition that it acquired these rights without assuming the obligations created by the exercise of the rights. I, therefore, hold that the contract became vested in the defendant, the Yellow Taxi Corporation, by the merger and, as there were no debts or liabilities of the merged corporation at the time of the merger, all the obligations of the contract rested on the second defendant.

Due to a change in the statute there is no question about the effect of the second merger on November 9, 1923. The third defendant, the Yellow Taxi Corporation, New York, thereby acquired all the property of the second and was liable to all its debts and obligations, both those existing at the time of the merger and those thereafter arising.

The contract is peculiar in that the obligation of the lessee party is partly fixed by the contract and partly left to the will of the lessee. As to 250 taximeters, the obligation to use and pay for them continues during the term of the contract. Whether the obligation goes beyond this depends on whether the *lessee* operated a greater number of taxicabs in the city of New York. The lessee, i. e., the first defendant, operated 370 taxicabs before the merger, upon which were installed Popp taximeters; but the possessor corporation operated many more and upon 165 additional cabs it required the plaintiff's assignor to install the Popp meters and thereafter used them on 535 taxicabs. To this extent at least the possessor corporation exercised rights under the contract which were vested in it on the merger. That the possessor corporation takes the rights under an executory contract is established by *McElwain Co.* v. *Primavera* (180 App. Div. 288). In the case at bar the possessor

corporation exercised its rights under the contract when it continued to use the 370 Popp taximeters installed by the lessee and increased the number to 535 after the merger. The obligation follows the right. A person cannot accept and reject the same instrument. (*Chipman* v. *Montgomery*, 63 N. Y. 221.)

Both parties acquiesced in bringing 535 taxicabs within the provisions of the contract. The second defendant required the plaintiff's assignor to install these meters under the contract. The plaintiff's assignor furnished them under the contract and the defendant used them under the contract. By the act of the parties the contract was construed to include these additional meters. The notion that the defendant might use them as long as it pleased and then throw them back into the hands of the plaintiff's assignor is inconsistent with the fact that they were furnished under the contract. An obligation on both sides, measured by the use of 535 meters, was thereby established, to continue during the term of the contract.

I think, therefore, that as to the fleet of 535 cabs, the defendant was bound to pay for the use of the meters during the term of the contract so long as they operated that number of cabs, and they were not relieved from liability by returning them. As the plaintiff's assignor was, up to the 18th day of February, 1924, able, ready and willing to furnish the meters and held them subject to the defendant's orders, the measure of recovery up to that date is the unpaid rental, or $9,764.95 with interest from February 18, 1924.

Every contract with a corporation is subject to the statute that the corporation may be merged into another which has acquired all its capital stock. Such statute is part of the charter of the corporation. On such a merger the possessor corporation becomes vested with all contracts of the merged corporation. When the contract is executory and bilateral the possessor corporation succeeds to all the rights under the contract and may exercise them. The exercise of the rights carries with it the obligations which flow from such exercise. Therefore, the use of the meters by the possessor company imposes the duty to pay for the use. I have held that, so far as the contract is definite as to the number of meters to be used, viz., 250, and so far as rendered definite by the lessee installing an additional 120 and the possessor corporation installing others up to the number of 535, the possessor corporation is bound during the term of the contract to pay for that number of meters so long as it used that number of cabs. But it does not follow that the possessor corporation is bound to install the lessor's meters on other taxicabs which it may bring into use. The contract provided that the lessee should install the lessor's meters on all taxicabs which it

should operate in excess of 250. It was not bound to increase the number. Whether it should do so depended on its own will. But that corporation no longer exists except for a single definite purpose. It no longer has the power to increase the fleet of taxicabs. The possessor company has never promised to install the meters on other taxicabs which it might place on the streets. In so far as it exercises the rights under the contract it assumes the correlative obligations. But in so far as the extension of the contract depended on the will of the lessee, the possessor corporation is not bound, for the fleet was increased by it and not by the merged corporation. The possessor corporation is bound by the obligations of the contract; but the obligation to install additional meters is by the very words of the contract limited to those taxicabs which the lessee, *i. e.*, the first defendant, should thereafter operate. I find no authorities to guide me as to the effect of a merger on a contract with the merged corporation when the contract contains a provision that the extent of the obligation depends on the act of the merged corporation. I have attempted to solve the problem on my conception of the effect of the merger upon this particular kind of contract. If I am right, it follows that the possessor corporation is not under obligation to install the Popp meters on taxicabs which it and not the lessee company has placed on the streets. This result is due to the character of the contract made with a corporation which is subject to the statute of merger; and I doubt if a contract could be so drawn as to accomplish any other result.

The evidence establishes, to my satisfaction, that the third defendant in February, 1924, definitely repudiated the contract. That defendant by act and word terminated the contract so far as it could; the plaintiff's assignor by the sale to the Ohmer Company, effective, as to the transfer, on March 1, 1924, accepted that act as final and the defendant became immediately liable for damages. The termination of the contract by the defendant and acceptance of the same by plaintiff's assignor constituted a breach of the contract under the authority of *Windmuller* v. *Pope* (107 N. Y. 674) and *Nichols* v. *Scranton Steel Co.* (137 id. 471). The defendant not only returned the meters and refused to recognize any obligations under the contract to use them, but equipped the cabs with other meters. The plaintiff's assignor was not bound to keep its meters ready for use and sue for rentals as they accrued but could sue for damages for the breach. It is true that the original contract with the Ohmer Company was made on January 22, 1924, but the plaintiff's assignor did not agree to withdraw from the business until the date of transfer. It was not, therefore, entirely disabled to perform until after the breach by defendant, to wit, when the business was actually trans-

ferred as of March 1, 1924. Up to the time of the final breach the possessor corporation is liable for rentals as I have held; but for the breach of the contract it is liable for damages. The measure of damages is the value of the contract at that time. There are many elements to be considered in determining the value of the contract. On the one side is the rental, on the other is the expense to which the lessor would be put in furnishing and maintaining the meters. Upon this subject much evidence has been taken. There is no way in which the damages can be measured with absolute mathematical certainty. All the factors must be considered and a conclusion drawn from them. I fix the amount of damages, based on the obligation to continue the use of 535 meters, at $40,000.

There can be no claim that the plaintiff is not the real party in interest for there is no such plea in the answer.

The clause in the contract requiring notice of breach was inserted to give to the lessor the opportunity of repairing it within thirty days and assumes a continuance of the contract. Obviously the clause was not intended to and does not apply to a repudiation of the entire contract.

The plaintiff, therefore, is entitled to judgment against the third defendant, the Yellow Taxicab Corporation, New York, in the sum of $49,764.95, with interest from February 18, 1924, and costs.

Submit requests to find within twenty days.