POPULAR LIBRARY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82721. Filed March 29, 1963.

*Victor Whitehorn, Esq.*, for the petitioner.
*William F. Chapman, Esq.*, for the respondent.

PIERCE, *Judge:* The Commissioner determined deficiencies in the income taxes of Best Books, Inc., a New York corporation, for taxable periods and in amounts as follows:

| Taxable period | Deficiency |
| --- | --- |
| Oct. 1 to Dec. 31, 1952 | $954.36 |
| Year 1953 | 839.47 |
| Year 1954 | 4,653.43 |

The notice of deficiency was issued in the name of Best Books, Inc.

The present petitioner, Popular Library, Inc., a New York corporation, filed the petition herein for redetermination of the above-mentioned deficiencies; and it therein stated that such action was taken by it for the following reasons:

A. As of December 30th, 1954 Best Books Inc. was merged into Literary Enterprises Inc., a New York corporation, which thereupon succeeded to all the rights, and became subject to all the liabilities, of Best Books Inc.

B. As of December 31st, 1958, Literary Enterprises Inc. was merged into Popular Library Inc., a New York corporation [the present petitioner], which thereupon succeeded to all the rights, and became subject to all the liabilities, of Literary Enterprises Inc.

The respondent expressly disclaimed during the trial herein, any intention to move for dismissal of the petition; and neither of the parties now contends that this Court lacks jurisdiction to entertain said

petition and decide the case. After having considered the facts with respect to said two mergers, as hereinafter set forth in our Findings of Fact, and also after having given consideration to the New York statute under which said mergers were effected,[1] and to relevant decisions of this Court,[2] we are convinced and here hold: (1) That Popular Library, Inc., as the result of the mergers above mentioned, became and is directly and primarily liable for any deficiencies in the income taxes of Best Books, Inc., for the taxable periods here involved (together with interest thereon according to law); and (2) that the petition filed herein by Popular Library, Inc., for redetermination of said deficiencies is within our jurisdiction.

The issues raised by said petition and to be here decided are as follows:

(1) Whether Best Books, Inc., in its final return for the year 1954 which was filed subsequent to its merger into Literary Enterprises, Inc., was entitled to exclude from its gross income for said year, without prior consent of the Commissioner to any change in its accounting method, certain amounts which it had received in cash during said year as prepayments for subscriptions to one of its magazines—notwithstanding that for all preceding years it had included all amounts received from prepaid subscriptions, in its gross income for the year of receipt.

(2) Whether assessment of any deficiency in the income tax of Best Books, Inc., for its said taxable year 1954, is barred by the statute of limitation—on the ground that the consent for extension of the statutory period, which (like its return) was executed in the name of Best Books, Inc., after that corporation's merger into Literary Enterprises, Inc., is invalid and ineffectual.

Both of the above issues relate directly to the deficiency determined for the taxable year 1954. As regards the deficiencies determined for the two other taxable periods above mentioned, these resulted from the Commissioner's disallowance of net operating loss carrybacks from said year 1954; and the allowability of such carrybacks is dependent upon the outcome of the issues above stated.

### FINDINGS OF FACT.

Best Books, Inc., was incorporated under the laws of the State of New York in 1945. During all taxable periods here involved, it kept its books of account and filed its income tax returns in accordance with an accrual method of accounting, and on the basis of taxable periods ended on December 31. Its returns for all of

---

[1] N.Y. Stock Corp. Law sec. 85.

[2] *Alaska Salmon Co.*, 39 B.T.A. 455; *Trahern Pump Co.*, 27 B.T.A. 363; and *Bowman Hotel Corporation*, 24 B.T.A. 1193.

said taxable periods were filed with the district director of internal revenue for the Upper Manhattan District of New York.

During the year 1954, said corporation was engaged in the business of publishing several magazines, among the titles of which were: Ranch Romances, Fantastic Stories, Top Western Annual, and Mammoth Crossword Puzzles. Such publications are commonly known in the magazine trade as "pulps." The corporation did its own editing of these magazines; but it contracted out to other concerns, all of the printing thereof, distribution of most of the magazines to newsstands and retail outlets, and also the addressing and mailing of such of the magazines as were sent to subscribers.

As regards those magazines which were mailed to subscribers, prepayments for these were received by Best Books, Inc., in cash, at the times when it obtained the subscriptions. Such cash prepayments for subscriptions, at the time of their receipt, were taken into the corporation's accounts without any restriction as to their use, and were thereafter employed in the operation of its business. Also for all taxable periods prior to that ended on December 31, 1954, Best Books, Inc., had followed the regular practice of including all such cash receipts from subscriptions in its gross income for the year of receipt.

On December 30, 1954, Best Books, Inc., together with three other domestic corporations named Best Publications, Inc., Visual Editions, Inc., and See Publishing Co., Inc., were all merged into Literary Enterprises, Inc., a New York corporation which had theretofore been organized in 1946. And about 4 years later, on December 31, 1958, said Literary Enterprises, Inc., together with two other domestic corporations named Better Publications, Inc., and Standard Magazines, Inc., were all merged into the present petitioner, Popular Library, Inc. Each of said mergers was effected under the provisions of section 85 of the Stock Corporation Law of New York, as amended (N.Y. Stock Corp. Law, sec. 85), the material provisions of which are set forth in the margin.[3]

---

[3] Sec. 85. Merger.

1. Any domestic stock corporation or any foreign stock corporation authorized to do business in this state owning at least ninety-five percentum of the outstanding shares of each class of the stock of any other domestic stock corporation, authorized to engage in business similar or incidental to the business which the possessor corporation is authorized to engage in, * * * may file in the department of state a certificate of such ownership, in its name and under its corporate seal, signed by its president or a vice-president and its secretary or treasurer and setting forth a copy of the resolution of its board of directors to merge such other corporation, and to assume all of its obligations, and the date of the adoption thereof, * * *. Upon the filing of such certificate, all of the estate, property, rights, privileges and franchises of such other corporation, shall vest in and be held and enjoyed by such possessor corporation as fully and entirely and without change or diminution as the same were before held and enjoyed by such other corporation, and be managed and controlled by such possessor corporation, and * * * in its name, but subject to all liabilities and obligations of such other corporation and the rights of all creditors thereof. * * * As amended L. 1949), c. 762, eff. April 22, 1949.

The mergers became effective on the above-mentioned respective dates of December 30, 1954, and December 31, 1958, when the prescribed certificates of merger were filed with the Department of State of the State of New York. In each case, the "possessor" corporation expressly assumed on the particular effective date, pursuant to resolutions of its board of directors which were set forth in the certificate of merger, all obligations of each of the merged corporations; and at the same time, "all of the estate, property, rights, privileges and franchises" of each of the merged corporations were vested in the possessor corporation "but subject to all liabilities and obligations of such other corporation[s]," pursuant to the provisions of the above-mentioned New York statute.

At the time of each merger, the possessor corporation owned all the outstanding shares of stock of each of the merged corporations. But until immediately prior to each merger, the principal stockholder and also the president of each of the corporations involved was Ned L. Pines.

Subsequent to the effective date of the first merger on December 30, 1954, under which Best Books, Inc., was merged into Literary Enterprises, Inc., an application (Form 7004) for an extension of 90 days within which to file the income tax return of Best Books, Inc., for its taxable year 1954, was filed in said corporation's name with the district director of internal revenue in New York; and thereupon such extension of time was granted.

Subsequently, under date of June 13, 1955, the income tax return of Best Books, Inc., was filed. This return was prepared in the name of that corporation; was signed and verified by the above-mentioned Ned L. Pines, as president; and the corporation's seal was affixed thereto. The return made no mention that said corporation had theretofore been merged into Literary Enterprises, Inc.; and it also made no mention of the fact that the return was the final closing return for Best Books, Inc.

In said 1954 income tax return of Best Books, Inc., there was excluded from the corporation's taxable income, the amount of $21,451.64 representing cash prepayments received during said year for subscriptions to one of its magazines, Ranch Romances. This item was not separately identified in the return, but in the attached closing balance sheet for the year 1954, there was included among the listed liabilities, the following item: "18. Prepaid income * * * subscriptions—$39,579.32."

The above-mentioned amount of $21,451.64, representing cash prepayments for subscriptions that had been excluded from the corporation's gross income for said year, was a commingled part of said listed liability; but the balance of said commingled amount of

$39,579.32 (being $18,127.68) did not pertain (notwithstanding the designation of the account) to cash prepayments for subscriptions.[4]

The above-mentioned method of excluding cash prepayments for subscriptions from the taxable income of the year 1954, and of deferring such income to a subsequent year or years, was different from the method of handling prepaid subscription income that had been employed for all prior years. This change was effected by means of adjusting journal entries, which were made at some unidentified date subsequent to the time when the accounts of Best Books, Inc., had vested in Literary Enterprises, Inc., pursuant to the merger on December 30, 1954. No application was made to the Commissioner of Internal Revenue for permission to make such change in the method of accounting for prepaid subscriptions; and no prior consent was obtained from the Commissioner to report income from prepaid subscriptions through use of said changed method.

Literary Enterprises, Inc., filed an income tax return for the following calendar year 1955, and attached thereto balance sheets as of the beginning and end of said year. Its opening balance sheet for said year did not include any liability for prepaid subscription income, similar to that included in the closing balance sheet of Best Books, Inc. (the merged corporation), for the preceding taxable year; and neither the opening nor closing balance sheet for said year included any prepaid income item whatever. Also, attached to said 1955 income tax return for Literary Enterprises, Inc., was a written schedule that contained the following statement:

On January 1, 1955, Literary Enterprises, Inc. in a non-taxable transaction, pursuant to section 332 of the Internal Revenue Code [entitled "Complete Liquidation of Subsidiaries"], liquidated the following subsidiaries: *Best Books, Inc.*, Best Publications, Inc., See Publishing Co., Inc., and Visual Editions, Inc. [Emphasis supplied.]

Subsequent to the filing of the above-mentioned income tax return of Best Books, Inc., for the year 1954, a consent agreement (Form 872) was filed with the New York district director of internal revenue in December 1957. This agreement provided that the period of limitation upon assessment of income and excess profits tax of said corporation for the year 1954 was extended to June 30, 1959. This consent agreement (like the 1954 return of said corporation) was executed

---

[4] Said balance of $18,127.68 represented the sales prices of magazines shipped to the contracting distributor in December 1954, which Best Books, Inc., had directed should not be delivered by such distributor to newsstands prior to a specified "on sale" date in January 1955. As to such sales, Best Books, Inc., did not bill the distributor for these mangazines until said subsequent "on sale" date; and also did not include the amounts of these sales in its 1954 taxable income.

No issue pertaining to the accounting for such sales to the distributor is involved in the present case.

in the name of Best Books, Inc., by the said Ned L. Pines, as president; and the corporate seal of Best Books, Inc., was attached thereto.

In addition to the above-mentioned income tax return and consent agreement relating to the taxable year 1954, the following instruments which all were executed in the name of Best Books, Inc., by Ned L. Pines as president, were filed with the Internal Revenue Service:

*Consent agreements*

| Taxable period | Date executed | Period for assessment extended to— |
|---|---|---|
| Oct. 1 to Dec. 31, 1952 | June 15, 1956<br>May 17, 1957<br>May 7, 1958 | June 30, 1957<br>June 30, 1958<br>June 30, 1959 |
| Calendar year 1953 | Nov. 26, 1956<br>May 7, 1958 | June 30, 1958<br>June 30, 1959 |

*Protest* of Best Books, Inc., against findings and report of the revenue agent covering all three taxable periods ended in 1952, 1953, and 1954—executed and verified under date of January 21, 1959.

*Power of attorney* from Best Books, Inc., to Victor Whitehorn, an attorney at law, authorizing him to act with respect to the above-mentioned protest—executed and verified under date of January 21, 1959.

*Application* for tentative net loss carryback adjustment from 1954 to 1952—executed and verified under date of June 8, 1955. This instrument bore the additional signature of James E. Salton, as comptroller of Best Books, Inc.

*Application* for tentative net loss carryback adjustment from 1954 to 1953—executed and verified under date of June 8, 1955. This instrument likewise bore the additional signature of James E. Salton, comptroller.

*Letter* on letterhead of Best Books, Inc., dated July 26, 1955, relating to the above carryback adjustments, addressed to the New York district director, and signed in the name of Best Books, Inc., by N. Pines, president.

At the time when the above-mentioned 1954 income tax return and all the other-mentioned instruments were filed, Ned L. Pines was also president and principal stockholder of the possessor corporation, Literary Enterprises, Inc.

Pursuant to the above-mentioned applications for tentative net loss carryback adjustments, the district director under date of October 3, 1955, tentatively allowed carrybacks to Best Books, Inc., from 1954 to 1952 and 1953, in the respective amounts of $954.36 and $839.47; and refund checks were then issued to Best Books, Inc., for said amounts.

Thereafter on June 8, 1959, the Commissioner of Internal Revenue issued the statutory notice of deficiency here involved, in the name of Best Books, Inc.; and he therein determined a deficiency for each of the taxable periods ended in 1952, 1953, and 1954 here involved, in

the amounts herein above stated. In said notice of deficiency the Commissioner further determined (so far as here pertinent) :

That as to the taxable year 1954, the above-mentioned amount of $21,451.64, representing unrestricted cash received in 1954 for prepaid magazine subscriptions, constituted ordinary income for that year; and that, after inclusion of said amount in the corporation's gross income for 1954, there was no net operating loss.

That as to the taxable period ended in 1952 and the taxable year 1953, no net loss carryback from 1954 to either of said periods was available; and accordingly, that there were deficiencies for said periods in amounts equal to the respective carryback refunds which had theretofore been made for said years.

### OPINION.

1. The first issue to be decided is whether Best Books, Inc., was entitled to exclude from its taxable income for the year 1954, unrestricted cash prepayments for subscriptions to one of its magazines, which it had received during that year. We decide this issue in the negative, for the following reasons.

In the recent case of *Schlude* v. *Commissioner*, 372 U.S. 128 (1963), the Supreme Court approved the action of the Commissioner of Internal Revenue in including in the gross income of the taxpayers (operators of ballroom dancing studios) for the years 1952, 1953, and 1954, amounts received under contracts executed during those years— despite the fact that the contracts obligated the taxpayers to render performance in subsequent periods. The Court stated in part:

The question remaining for decision, then, is this: Was it proper for the Commissioner, exercising his discretion under § 41,[7] 1939 Code, and § 446(b),[8] 1954 Code, to reject the studio's accounting system as not clearly reflecting income and to include as income in a particular year advance payments by way of cash, negotiable notes and contract installments falling due but remaining unpaid during that year. We hold that it was since we believe the problem is squarely controlled by *American Automobile Association*, 367 U.S. 687.

The Court there had occasion to consider the entire legislative background of the treatment of prepaid income. The retroactive repeal of § 452 of the 1954 Code, "the only law incontestably permitting the practice upon which [the taxpayer] relies," was regarded as reinstating longstanding administrative and lower court rulings that accounting systems deferring prepaid income could be rejected by the Commissioner.

"[T]he fact is that § 452 for the first time specifically declared petitioner's system of accounting to be acceptable for income tax purposes, and overruled the long-standing position of the Commissioner and courts to the contrary. And the repeal of the the section the following year, upon insistence by the Treasury that the proposed endorsement of such tax accounting would have a disastrous impact on the Government's revenue, was just as clearly a mandate from the Congress that petitioner's system was not acceptable for tax purposes." 367 U.S., at 695.

Confirming that view was the step-by-step approach of Congress in granting the deferral privilege to only limited groups of taxpayers [6] while exploring more deeply the ramifications of the entire problem.

* * * Consequently, as in the *American Automobile Association* case, we invoke the "long-established policy of the Court in deferring, where possible, to congressional procedures in the tax field" and, as in that case, we cannot say that the Commissioner's rejection of the studio's deferral system was unsound. [Footnotes omitted. Bracketed material in original.]

The above holdings of the Supreme Court are here apposite, and here controlling. We believe they establish the principle that, in the absence of statutory provisions to the contrary, accrual-basis taxpayers which have received unrestricted cash for services or benefits before performance must report such prepayments as income for the year of receipt. And for the year 1954 here involved, there were no statutory provisions to the contrary.

Accordingly, we do not reach such questions as: Whether it was necessary for Best Books, Inc., to secure prior consent from the Commissioner, before making the change in its method of handling prepaid subscription income (see sec. 446(e), 1954 Code); and whether the changed method correctly reflected income (see sec. 446 (b), 1954 Code).

We approve the Commissioner's determinations as to this first issue.

2. The second issue is whether assessment of the deficiencies in the income taxes of Best Books, Inc., for the periods involved are barred by the statute of limitation. Petitioner contends that assessment is barred, on the grounds that Best Books, Inc., was "nonexistent" after the merger on December 30, 1954, and that the consent agreements (Form 872) to extend the statute of limitation to a date subsequent to the issuance of the notice of deficiency are ineffectual because they were executed in the name of such "nonexistent" corporation. We do not agree with this contention.

In *Irvine v. New York Edison Co.*, 207 N.Y. 425, 101 N.E. 358, the Court of Appeals of New York stated that where one corporation was merged into another, under a former provision of the New York Stock Corporation Law from which the present section 85 of that law was derived, the merged corporation's "corporate existence is retained for the one purpose of carrying out in good faith the reservation in

---

[6] By P.L. 85–866, sec. 28, Congress added section 455 to the 1954 Code (effective only for taxable years after 1957, and therefore not applicable in the instant case), under which accrual-basis publishers are permitted, for years subsequent to 1957, to include prepaid subscription income in gross income for the taxable years during which the liability to furnish or deliver a periodical ends.

Also, by P.L. 87–109, sec. 1(a) (effective January 1, 1961), Congress added section 456 to the 1954 Code, under which the deferral practice was extended to certain membership corporations.

There are no statutory provisions similar to those above mentioned, which are applicable to taxable years preceding the effective dates of these new sections.

the statute of the rights of creditors thereof." To the same effect see *Wire Wheel Corporation of America*, 16 B.T.A. 737, affd. 46 F. 2d 1013 (C.A. 2).

We believe such "retained" corporate existence for the protection of creditors was sufficient to permit Best Books, Inc., to execute valid consent agreements to extend the statute of limitation with respect to its income tax liabilities—which would include the consent agreements here involved. If this is not true, then it follows that all of the various instruments which were executed in the name of Best Books, Inc., subsequent to the 1954 merger, including the 1954 return, would be invalid and of no effect; and, in the absence of any valid return for 1954, there would be no statutory period of limitation here applicable, and the deficiency for 1954 could be assessed at any time. Sec. 6501 (c) (3), 1954 Code.

We decide that assessments of the deficiencies for all of the periods involved are not barred by the statute of limitation.

Also, we affirm the respondent's determination of deficiencies for the taxable periods ended in 1952 and 1953; for since we have approved the Commissioner's determination as to 1954, there is no net operating loss for that year with respect to which carrybacks to the preceding taxable periods are available.

*Decision will be entered for the respondent.*