BOWMAN HOTEL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BOWMAN-BILTMORE HOTELS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 10651, 24912, 28971, 38006, 41472, 43629.

Promulgated December 19, 1931.

*H. Kennedy McCook, Esq.*, for the petitioners.
*J. R. Johnston, Esq.*, and *J. A. Lyons, Esq.*, for the respondent.

OPINION.

BLACK: The issues involved in this proceeding have already been stated preliminary to our findings of fact. We will first dispose of the question of jurisdiction mentioned in paragraph (5) of our preliminary statement. In Docket Nos. 24912, 28917, and 38006 the appeals are taken in the name of "The Bowman-Biltmore Hotels Corporation, successor to Bowman Hotel Corporation."

Paragraph (1) of each of said petitions alleges: " The Bowman Hotel Corporation was incorporated April 16, 1916, under the laws of the State of New York and has its principal place of business at the Commodore Hotel, Lexington Avenue and 42nd Street, New York, N. Y. It was succeeded in February, 1924, by the Bowman-Biltmore Hotels Corporation, Madison Avenue and 43rd Street, New York, N. Y., a corporation organized for the purpose of acquiring and operating the Commodore Hotel together with certain other hotel properties."

The deficiency notices from which appeals were taken in said dockets were dated, respectively, January 12, 1927, May 24, 1927, and March 19, 1928, and in each instance the notice was addressed to the Bowman Hotel Corporation, Lexington Avenue and 42nd Street, New York, N. Y.

In Docket No. 38006 a motion was filed by the respondent in June, 1928, to dismiss the petitio 1, for the reason that no deficiency had

been determined against the Bowman-Biltmore Hotels Corporation, petitioner. Said motion came on for hearing before a division of the Board, which under date of August 1, 1928, ordered that the petitioner be given until August 15, 1928, to file an amended petition, showing the facts and circumstances under which the Bowman-Biltmore Hotels Corporation had been organized by consolidation of the Bowman Hotel Corporation and the Beau-Site Company. Said amended petition was thereafter filed and the following allegations are made therein:

(1) The Bowman Hotel Corporation was incorporated April 16, 1916, under the laws of the State of New York, and had its principal place of business at the Commodore Hotel, Lexington Avenue and 42nd Street, New York, New York. On February 20, 1924, it was consolidated with the Beau-Site Company, also a corporation formed under the laws of the State of New York, pursuant to section 86 of the Stock Corporation Law of the State of New York under the name of Bowman-Biltmore Hotels Corporation. The Bowman-Biltmore Hotels Corporation thereby became the successor to the Bowman Hotel Corporation and all the property, real, personal, and mixed, and all the debts due on whatever account to the Bowman Hotel Corporation, all stock, subscriptions and other things in action belonging to the Bowman Hotel Corporation were vested in the Bowman-Biltmore Hotels Corporation and became as effectually the property of the new corporation as they were of the Bowman Hotel Corporation. The Bowman-Biltmore Hotels Corporation also became vested through the consolidation with all the rights, franchises and privileges possessed by the Bowman Hotel Corporation and became liable for all liabilities and obligations of the Bowman Hotel Corporation in the same manner as if the new corporation had itself incurred such liabilities and obligations. The consolidation by virtue of the provisions of the statute terminated the existence of the Bowman Hotel Corporation as well as the Beau-Site Company and the Bowman-Biltmore Hotels Corporation became the only company authorized thereafter to sue or to be sued on any claim or obligation of the consolidating companies or to institute any proceeding for the enforcement of any right, privilege or claim of such consolidating corporations.

After petitioner had filed its amended petition aforesaid, no further action was taken on respondent's motion to dismiss the appeal in Docket No. 38006. As to Docket Nos. 24912, 28971, and 38006, it is not now contended by either party that we do not have jurisdiction.

No motion for dismissal was ever filed in Docket Nos. 24912 and 28971, although the same question is presented in those cases as in Docket No. 38006, and no amendment to the petitions in those cases has been filed. At the hearing counsel for respondent insisted that we do have jurisdiction in these dockets and can determine the deficiencies, if any, of the Bowman Hotel Corporation for the respective taxable years involved against the petitioner, Bowman-Biltmore Hotels Corporation, because of the language of the New York

statute under which the consolidation was effected in 1924. The language of this statute is stated in footnote.[1]

Petitioner contends that in these dockets which we have just named the Bowman-Biltmore Hotels Corporation, as successor, is a proper party petitioner, but that any deficiency found by this Board must be found against the corporation to whom the deficiency notice was mailed, which, as we have already pointed out, in these dockets was the Bowman Hotel Corporation. We do not agree to this latter contention, because, as we interpret the statutes of the State of New York, providing for the consolidation of corporations, the petitioner corporation in this proceeding, Bowman-Biltmore Hotels Corporation, is obligated and birthmarked by statute with all primary liability of its components—an obligation which is not measured or proven by its obligation as transferee of property under section 280 of the Revenue Act of 1926, but is determined by the primary

---

[1] [McKinney's Consolidated Laws of New York—1923. Stock Corporation Law, ch. 60.]

SEC. 86. Any two or more corporations organized under the laws of this state for the purpose of carrying on any kind or kinds of business which a corporation organized under article two of this chapter may carry on, may be consolidated into a single corporation by the filing of a certificate which shall be entitled and endorsed "Certificate of Consolidation forming the ———— pursuant to section 86 of the stock corporation law," and which shall state:

   \*     \*     \*     \*     \*     \*     \*

SEC. 88. *Powers of Corporation formed by Consolidation.*—Such new corporation in addition to the general powers of corporation shall enjoy the rights, franchises, and privileges possessed by each of the corporations so consolidated, subject to the restrictions, liabilities, duties and provisions contained in this chapter, and may prosecute or carry on any kind of business which any of the consolidating corporations was authorized by law to conduct. [Added by L. 1923, ch. 787, Oct. 1. Formerly Business Corporation Law, sec. 9.]

SEC. 89. Upon the filing of such certificate of consolidation in the office of the secretary of state all the rights, privileges, franchises and interests of each of the constituent corporations, and all the property, real, personal and mixed, and all the debts due on whatever account to either of them, as well as all stock subscriptions and other things in action belonging to either of them, shall be taken and deemed to be transferred to and vested in each new corporation, without further act or deed; and all claims, demands, property and every other interest shall be as effectually the property of the new corporation as they were of the constituent corporations, and the title to all real estate, taken by deed or otherwise, under the laws of this state, vested in either of such constituent corporation, shall not be deemed to revert or be in any way impaired by reason of the consolidation, but shall be vested in the new corporation.

SEC. 90. *Rights of Creditors.*—The rights of creditors of any corporation that shall be consolidated shall not in any manner be impaired, nor shall any liability or obligation due or to become due, or any claim or demand for any cause existing against any such corporation or against any stockholder thereof be released or impaired by any such consolidation; but such new corporation shall be deemed to have assumed and shall be liable for all liabilities and obligations of each of the corporations consolidated in the same manner as if such new corporation had itself incurred such liabilities or obligations. The stockholders of the respective corporations consolidated shall continue subject to all the liabilities, claims and demands existing against them as such, at or before the consolidation; and no action or proceeding then pending before any court or tribunal in which any corporation that may be consolidated is a party, shall abate or be discontinued by reason of such consolidation, but may be prosecuted to final judgment, as though no consolidation had been entered into; or such new corporation may be substituted as a party in place of any corporation so consolidated, by order of the court in which such action or proceeding may be pending. [Added L. 1923, ch. 787, Oct. 1. Formerly Business Corporation Law, sec. 11.]

debt or obligation of the component. The reasons why we think that is the situation in the instant proceeding, we will discuss more at length later on in this opinion.

As we stated in *Pittsburgh Terminal Coal Corporation*, 23 B. T. A. 248, this Board is limited in its jurisdiction to the boundaries prescribed by Congress, and if from the pleadings of the parties and the evidence brought before us it appears we have no jurisdiction, we must take notice of that fact and dismiss the proceeding, even though both parties are willing to stipulate that we do have jurisdiction. This is not a case where the assets of a corporation are transferred to a new corporation and the old corporation goes into voluntary liquidation. Clearly, under such a state of facts, the corporation in dissolution, under section 105 (8) of the Stock Corporation Law of the State of New York [2] would have its existence continued for winding up its business and its corporate affairs and would be the proper party to prosecute an appeal from a deficiency notice which it had received and we would have no jurisdiction to hear an appeal from the successor corporation. *Bond, Inc.*, 12 B. T. A. 339; *American Arch Co.*, 13 B. T. A. 552; *Carnation Milk Products Co.*, 20 B. T. A. 627; *Nichols & Cox Lumber Co.*, 24 B. T. A. 54. But that is not the kind of a case which we have before us. The proceeding which we have before us in the instant case involves the consolidation statutes of the State of New York.

A corporation chartered under the laws of the State of New York which has had its existence terminated by reason of its consolidation with another corporation, thus forming a new corporation, presents a very different situation from that which exists where a corporation has transferred its assets to another corporation and then itself has gone into voluntary liquidation. In the latter situation the corporation which has gone into voluntary dissolution can, and is required to, wind up its affairs under section 105 (8) of the Stock Corporation Law of the State of New York, and may sue and be sued in its own name, whereas no such provision is made for corporations which are dissolved by reason of their consolidation under the cited statutes of New York.

The rights of creditors in the latter case are determined by section 90, Consolidated Laws of New York, quoted in our footnote 1. In the case of the consolidation involved in the instant case, if at the time the consolidation was made a suit had been pending against the

---

[2] Section 105 (8), Stock Corporation Law, McKinney's Consolidated Laws of New York Relating to Voluntary Dissolution of Corporations without Judicial Proceedings, reads:

Such corporation shall continue for the purpose of paying, satisfying and discharging any existing liabilities or obligations, collecting and distributing its assets and doing all other acts required to adjust and wind up its business and affairs and may sue and be sued, in its corporate name.

Bowman Hotel Corporation, it would not have abated by reason of the consolidation, but might have been prosecuted either against the corporation in its own name or the new corporation, Bowman-Biltmore Hotels Corporation, might have been substituted as a party. This by reason of the express language of the statute.

There can be no question, however, that any suits brought after the effective date of the consolidation, either to recover claims owing to the Bowman Hotel Corporation prior to the date of its consolidation, or liabilities existing against it at the time of the consolidation, including, of course, tax liabilities, would have to be brought by or against the Bowman-Biltmore Hotels Corporation. *Capp* v. *Colorado Coal Co.*, 60 N. Y. 293. There is no provision of the New York statutes which permits a consolidating corporation to sue or be sued in its own name after the effective date of its consolidation.

The deficiency notices from which appeals are taken in Docket Nos. 24912, 28971 and 38006 were all mailed after the consolidation had been effected. These deficiency notices, although addressed to the Bowman Hotel Corporation, were promptly delivered to the consolidated corporation, Bowman-Biltmore Hotels Corporation, and we hold that the appeals which the latter has taken from such deficiency notices are proper and that it is liable for deficiencies, if any, which may be determined in these proceedings against it as the successor in law of Bowman Hotel Corporation.

The statutes of New York have separate provisions for mergers and consolidations. In the case of a merger the statute as it formerly existed did not make the corporation receiving the assets of the merged institution unconditionally liable for its debts, but the corporate existence of the merged institution was continued for the purpose of affording creditors a remedy and they must sue and prosecute their claims against the corporation whose assets have been merged into such other corporation. Cf. *Wire Wheel Corporation of America*, 16 B. T. A. 737.

It is different however where a consolidation has taken place. In that case the assets and liabilities of the consolidating corporations become the assets and liabilities of the new corporation which is brought into being by reason of the consolidation. For example, if, after the consolidation involved in the instant case had been effected, the Commissioner of Internal Revenue had sued to collect any income or excess-profits taxes due by the Bowman Hotel Corporation for the taxable years involved in the dockets now under discussion, he would have had to sue the Bowman-Biltmore Hotels Corporation. The Bowman Hotel Corporation would not be a proper party to the suit. This distinction between mergers and consolida-

tions under the New York statutes was stated by the Court of Appeals of New York in *Irvine* v. *New York Edison Co.*, 101 N.E. 358, in which the court, among other things, says:

Each form of procedure is independent of the other. Where a consolidation is consummated pursuant to the statute, it is expressly provided that the rights of creditors of any corporation that shall be so consolidated shall not in any manner be impaired, and also "such new corporation shall succeed to and be held liable to pay and discharge all such debts and liabilities of each of the corporations consolidated in the same manner as if such new corporation had itself incurred the obligation or liability to pay such debt or damages." Consol. Laws, 3, 4, Sec. 11. If the gas company was liable for the indebtedness to the plaintiff described in the complaint, the action will lie against the defendant therefor because of the statute quoted. Whether the gas company became liable for the debts of the Block Company depends upon the statute, pursuant to which the merger took place. In the statute authorizing a merger of corporations there is no provision making the possessor corporation liable for the debts of the corporation merged. It is expressly provided in that statute that the merging of corporations shall be "without prejudice to any liabilities of such other corporation or the rights of any creditors thereof." This reservation of the rights of creditors permits them to proceed against the debtor corporation, notwithstanding such corporation is merged into another. The rights of creditors include the right to sue the debtor corporation, and to take the property which was of the debtor corporation by execution issued upon a judgment obtained against such debtor. Such right rests upon the express terms of the statute, and does not depend, as has been suggested, upon the existence and a finding of a fraudulent transfer.

To the same effect is *Guaranty Trust Co.* v. *N. Y. & Queens County Ry. Co.*, 253 N. Y. S. 199–201; 170 N. E. 887. These statutes of the State of New York to which we have referred are more than rules of procedure—they are rules of property. In discussing the corporation Consolidation Act of the State of New York, then existing, the court in *Edison Electric Light Co.* v. *Westinghouse*, 34 Fed. 232, said:

The defendants however interpose the objection that the provision just cited is for the government of the New York courts alone and can have no control over the equity practice in the Federal Courts. On such examination as we have given to the matter and to the authorities cited in the brief of counsel, we cannot assent to this view. No good reason has been assigned, nor does there appear to be any, why this court should not recognize the statutory provision of New York and apply it to the pending suit between these parties. The question would seem to involve something more that a mere rule of practice; it embraces the legal and equitable rights of the plaintiff under the laws of the state which created it and prescribed the terms and conditions on which it might be consolidated with one or more corporations of the same state.

The question of jurisdiction involved in the instant case was not before us in *Pittsburgh Terminal Coal Corporation*, 23 B. T. A. 248, for in that case the deficiency notice for taxes due by Meadows Lands Coal Company was issued to Pittsburgh Terminal Coal Corporation,

the consolidated corporation, and from which deficiency notice it appealed. We held that the Board did have jurisdiction in that case. We further held that the petitioner was not liable as a taxpayer for deficiencies incurred by Meadows Lands Coal Company in years when petitioner, Pittsburgh Terminal Coal Corporation, was not in existence. In view, however, of the statutes of the State of New York providing for the consolidation of corporations which we have cited, and in view of the decisions of the appellate courts of that State, interpretative of such statutes, which we have likewise cited, we do not believe *Pittsburgh Terminal Coal Corporation, supra; Pittsburgh & West Virginia Ry. Co.*, 22 B. T. A. 876; and *Gideon-Anderson Lumber & Mercantile Co.*, 18 B. T. A. 329, should be followed in this proceeding and, accordingly, we hold that when the Bowman Hotel Corporation and Beau-Site Company consolidated and became the Bowman-Biltmore Hotels Corporation, the tax liabilities, including the deficiencies, if any, involved in this proceeding, of the Bowman Hotel Corporation, became the tax liabilities of the Bowman-Biltmore Hotels Corporation and, therefore, we have jurisdiction of Docket Nos. 24912, 28971, and 38006.

Docket No. 10651 is an appeal in the name of the Bowman Hotel Corporation and paragraph (1) of the petition filed therein is the same as paragraph (1), already quoted, in the petitions filed in the dockets which we have just discussed, prior to the amendment filed to the petition in Docket No. 38006. The petition contains the following verification: "John McE. Bowman, being duly sworn says that he is the President of the Bowman-Biltmore Hotels Corporation, the successor of the Bowman Hotel Corporation, above named, and as such is duly authorized to verify the foregoing petition; that he has read the said petition and is familiar with the statements therein contained and the same are true, except such as are made upon information and belief and these he believes to be true." The petition is captioned "Appeal of Bowman Hotel Corporation, (Predecessor of the Bowman-Biltmore Hotels Corporation)."

The deficiency notice from which the appeal was taken was addressed to the Bowman Hotel Corporation, New York, New York, and was mailed November 7, 1925. The petition in the appeal was filed January 5, 1926. At the hearing respondent offered in evidence a certified copy of the certificate of consolidation filed with the Secretary of State of the State of New York, showing that the Bowman Hotel Corporation and Beau-Site Company were in 1924 consolidated under the laws of the State of New York into a new corporation, to be known thereafter as the Bowman-Biltmore Hotels Corporation. After introducing such certificate in evidence, respondent moved that the Bowman-Biltmore Hotels Corporation be substituted,

under the Board's rules of procedure, as party petitioner in place of the Bowman Hotel Corporation.

The general rule in the courts regarding substitution of parties seems to be that where the interests of a party to an appeal or writ of error devolve upon another, either by operation of law or by act of the parties, a person acquiring such interests will usually be allowed to be substituted and to prosecute or defend the appeal or writ in place of the original party, if the proper steps are taken in accordance with the practice in the particular jurisdiction.

Rule 37 of the rules of practice of this Board provides for the substitution of parties and, among other things, says: " In the event of a change of name of a corporation or other party petitioner, a motion to amend the pleadings to show such change should be filed, accompanied by a certified copy of the certificate, decree or other document, effecting such change, certified by the official having custody of such document." In view of Rule 37, just cited, and the statutes of the State of New York, relating to the consolidation of corporations and the decisions of the appellate courts of New York construing the provisions of said statutes, already cited by us, we think respondent's said motion should be and it is hereby granted, and the name Bowman-Biltmore Hotels Corporation as party petitioner is substituted for Bowman Hotel Corporation as party petitioner in Docket No. 10651.

We will next discuss issue No. (4), wherein petitioner contends for the right to deduct from its gross income in 1926, $8,107 Federal capital-stock tax paid on June 19, 1928, for 1926. This amount was not deducted by petitioner when it filed its income-tax return for 1926 and respondent's deficiency notice for 1926, mailed to petitioner February 15, 1929, made no reference thereto. Petitioner however in an amendment to its petition filed December 17, 1929, in Docket No. 43629, sets up the payment of this $8,107 in 1928 and asks that "the petitioner's consolidated net income should be reduced in the amount of $8,107.00, being federal capital stock tax which accrued on July 1, 1926."

Counsel for respondent in his brief concedes that of the amount claimed by petitioner as a deduction, $4,535.50 should be accrued and allowed. Respondent claims however that the balance of $3,571.50 should not be allowed because it was in fact accrued as a liability on the books of the corporation in 1926 and duly taken as a deduction in making up its income-tax return for that year.

An examination of the facts shows that petitioner did accrue on its books $3,571.50 as capital-stock tax in 1926, but this was an accrual of one-half of the capital-stock tax of $7,143 due and payable from petitioner July 1, 1925. Petitioner's action in accruing this $3,571.50

in 1926 was improper. It had no right to accrue a 1925 tax liability in 1926. Inasmuch as petitioner took a deduction for this $3,571.50 on its income-tax return for 1926 and such deduction has not been disturbed by respondent, respondent's contention that deduction of the $8,107 capital-stock tax paid in 1928 for 1926, should be reduced by the $3,571.50 improperly accrued and allowed for similar taxes which were paid and properly accruable in 1925, is sustained.

Where a taxpayer keeps its books on the accrual basis, taxes should be accrued in the year when the liability becomes fixed. *Aluminum Castings Co.* v. *Routzahn,* 282 U. S. 92.

Issue No. (3) involves the right of corporations, members of an affiliated group filing a consolidated return, to bring forward net losses incurred in the prior year when they were not members of the affiliated group. The taxable period involved in this particular issue is March 1, 1924, to December 31, 1924, and all of 1925. The ground of the Commissioner's action with reference to these items is stated in his deficiency letter as follows: " In connection with items three and four, you are advised that the corporations sustaining losses for 1923 and the period January 1, 1924, to February 29, 1924, also sustained losses during the taxable years for the consolidation. Such losses sustained in a non-affiliated period may be applied only against subsequent income of that particular company. No deductible loss may be carried forward to the consolidated period." The applicable revenue act is the Revenue Act of 1924, section 206 (b).

The Commissioner has ruled that during the period March 1, 1924, to December 31, 1924, and for all the calendar year 1925, the following corporations were affiliated: Bowman-Biltmore Hotels Corporation, B. L. M. Bates Corporation, Hotel Ansonia Corporation, Bellevue-Griswold Hotel Company, Westchester Biltmore Corporation, Punderford Company, Inc., Commodore-Biltmore Company, Commodore Garage, Inc., 328 East Forty-sixth Street, Inc. Of these members of the affiliated group, B. L. M. Bates Corporation, Hotel Ansonia Corporation, Bellevue-Griswold Hotel Company, and Westchester Biltmore Corporation, had losses for 1924 and 1925 and respondent has allowed these losses calculated from March 1, 1924, to December 31, 1924, in making up the consolidated net income of the affiliated group for that period, and also has allowed their losses in 1925 in arriving at the net income of the consolidated group for 1925. These same four corporations had net losses as stated in our findings of fact for the period January 1, 1924, to March 1, 1924, next prior to the affiliation, and these net losses respondent has refused to allow petitioner to bring forward and use as a deduction .

in computing net income of the consolidated group, for reasons which we have just stated.

Respondent is sustained on this issue, on the authority of *Commissioner* v. *Ginsburg Co.*, 54 Fed. (2d) 238, and *Woolford Realty Co.* v. *Rose*, 53 Fed. (2d) 821.

The last issue for our determination is the actual cash value of the leasehold acquired by the Bowman Hotel Corporation in exchange for 19,995 shares of its common stock of the par value of $100 per share issued to Holland B. Judkins. Briefly stated, it is contended by petitioner that the leasehold and building agreement in question had an actual cash value at the time of acquisition of at least $2,000,-000 and that it is entitled to include in its invested capital for 1919, 1920 and 1921 that amount and to compute the annual allowance for exhaustion on that basis, for all the taxable years.

Respondent contends that the leasehold and building agreement had no actual cash value in excess of the rentals which were agreed to be paid for them and that, even if they did have the value claimed by petitioner, the purported transfer of the lease and building agreement to the Bowman Hotel Corporation was not in compliance with the statute of frauds of the State of New York and was void; that even if the purported transfer of the lease and building agreement were in compliance with the statute of frauds, it was null and void because John McE. Bowman, who negotiated the lease with the lessor and was the real party in interest in making the transfer, was an officer and director of the Bowman Hotel Corporation and his acquirement of the leasehold was for the benefit of the corporation, and under the laws of the State of New York he would have no right to benefit individually from the transaction; and that for these reasons the corporation has no right to include the value of the lease and building agreement in its invested capital or to take deductions as exhaustion thereof.

It is well settled that where a corporation purchased a leasehold and paid therefor by issuance of its capital stock, such leasehold is tangible property and the corporation is entitled to include in its invested capital the actual cash value of the leasehold at the time of purchase and furthermore is entitled to exhaust the cost of the leasehold ratably over the life of the lease. *A. H. Woods Theatre Co.*, 12 B. T. A. 827; *Hotel Waldorf Co.*, 22 B. T. A. 430; *William Penn Hotel Co.*, 23 B. T. A. 566, and cases cited therein. Petitioner offered considerable evidence as to the value of the leasehold and building agreement at the time of their purported transfer to petitioner by one Holland B. Judkins, which transfer was also contemporary with the actual execution of the lease and building agreement to

petitioner by the lessor, New York State Realty & Terminal Company. Respondent offered no testimony as to the value of the lease and building agreement, contenting himself with his cross-examination of petitioner's witnesses.

John McE. Bowman, a witness for the petitioner, testified that he was a hotel operator of many years experience and had dealt in and with many hotel leases in New York City and elsewhere, and that in his opinion the leasehold and building agreement in question had a value at the time of their acquisition by the Bowman Hotel Corporation in 1926 of at least $2,000,000. Bowman testified that his estimate of value was based upon figures which he made at the time of negotiating the lease and building agreement which were to the effect that a hotel of the size he had in mind to construct, operated at moderate rates and considering the location, would yield a net income of around $1,000,000 a year. He testified that this expectation of earnings had been actually realized in the subsequent operation of the hotel.

Robert Huntley, a real estate broker and appraiser of wide and varied experience, testified for petitioner. He testified that the leasehold and building agreement had a valuation of $2,213,283 at the time it was acquired by petitioner. He summed up the way he arrived at the above stated value of the leasehold and building agreement in the following language:

Then there is another way of looking at the leasehold interest. We have in this leasehold a benefit of the financing of $6,582,592. Under the conditions of the money market in 1916, in order to get this financing, it would have cost at least twelve and a half per cent to cover the sale of securities and a broker's commissions, and the bonuses which a lending company would want, while in this case it cost practically nothing to the borrower. I might figure that the lessee received a benefit here of twelve and a half per cent on $6,582,592, which, in round figures, is eight hundred thousand dollars.

Then, considering that the fair ground rent of this property would be $190,000, the tenant paying all taxes and charges of every kind, the rent reserved $175,000, and the tenant paid 91 per cent of the taxes against the land. Under this lease the tenant would have a benefit of $15,000 per year in actual rent, plus an additional benefit of five thousand dollars per year from a nine per cent saving on the taxes, making a total benefit of $20,000 per year. For twenty-one years this benefit would have a market value, in round figures, of $200,000.

Third, under the provisions of the lease, the loans of money would be amortized in twenty-one years, and the lessee would own the building free and clear of any encumbrances. Assuming that the rental, under the renewal, would be fixed at a land rental which would give no benefit to the lessee, he would still have the right to use the building. Assuming that this building had depreciated at the rate of two per cent per annum for twenty-one years, the building would still be worth $5,220,000 and the lessee would be benefitted by the use of that building.

The fair rental for that building would be eight per cent of $5,220,000, which is $417,600 clear, and to this would be added the annual benefit of the tax

clause, five thousand dollars per year, so the lessee would receive an annual benefit of $422,600 per year for twenty-one years.

This benefit, deferred twenty-one years, would have a value of $1,135,265.

At the end of the first renewal the lessor reserves the right to buy the building and pay its fair market value, or else to grant a new lease. The building at that time would have been depreciated two per cent per year for forty-two years, which would leave its value $1,440,000.

I would assume that the landlord would elect to renew the ground lease rather than purchase the building.

I would also assume that the ground rental would be so fixed that there would be no benefit to the lessee. The lessee would then have the right to use the building worth $1,440,000 and the fair rent of that would be eight per cent of that value, which would be $155,200, per year, plus a tax benefit of five thousand dollars, which makes the total benefit $120,200 per annum.

He would enjoy these benefits for twenty-one years and that would have a present-day value of $78,018. The total value of the leasehold under this method of figuring would be as follows:

$800,000, $200,000, $1,135,165, $78,018, making a total valuation of $2,213,283, which is the value applicable to the common stock.

John J. Fleming, another witness produced on behalf of the petitioner, stated he had been a hotel broker for twenty-five years and that during most of that time his business had been the buying and selling of hotel leases for clients in New York City and elsewhere. He testified that in his opinion the leasehold and building agreement had a value at the time in question of $4,500,000. This witness offered no adequate explanation of how he arrived at so high a value.

We can not ignore testimony of the nature which we have just cited above and adopt respondent's contention that the leasehold and building agreement had no value above the rental agreed to be paid. *Chicago Railway Equipment Co.* v. *Blair*, 20 Fed. (2d) 10-12; *Bonwit Teller & Co.* v. *Commissioner* 52 Fed. (2d) 904, and cases there cited. If the evidence we have cited above were all that we had before us bearing on the value of this leasehold and building agreement at the time in question, we would be disposed to sustain petitioner's contention that it had a value of $2,000,000, but in addition to this evidence we have the fact brought out at the hearing that of the 19,995 shares of common stock issued to Holland B. Judkins in payment for the transfer of the leasehold and building agreement, more than 14,000 shares were reissued upon Judkin's endorsement to purchasers of the preferred stock of the Bowman Hotel Corporation. At first as many as two shares of common stock were issued with each share of preferred stock; later only one share of common was issued with each share of preferred stock and this amount was still further decreased until finally no common stock at all was issued with the preferred stock. If the leasehold and building agreement had a value of $2,000,000 or more at the time they were transferred to the Bowman Hotel Corporation, it

does not seem reasonable to us that the Hotel Corporation would sell one share of its preferred stock of the par value of $100 and two shares of its common stock of par value $100 each, all for $100. It does not appear from the evidence just what, if anything, the Bowman Hotel Corporation paid John McE. Bowman for this more than 14,000 shares of common stock standing in the name of Holland B. Judkins, nominee of Bowman, which were reissued to purchasers of the preferred stock. It may well be that in later years this common stock became worth its full par value of $100 per share, and the leasehold and building agreement became worth the full $2,000,000 claimed for them, after the Commodore Hotel was completed and in successful operation and earning around $1,000,000 a year net, before the deduction of income and excess-profits tax; but what we are concerned with is the actual cash value of the leasehold and building agreement for invested capital purposes, and the cost of it for exhaustion purposes, at the time it was acquired by the corporation in exchange for its common stock in September, 1916.

Petitioner can not increase its allowance for invested capital purposes or for exhaustion-deduction purposes merely because property which it has acquired has appreciated in value. *La Belle Iron Works* v. *United States*, 256 U. S. 377. So, weighing all the facts in evidence, we have found that the actual cash value of the leasehold and building agreement at the time it was acquired by petitioner in 1916, was $1,000,000.

But respondent contends that even if the leasehold and building agreement did have this value at the time in question, nevertheless the purported transfer of them by Judkins to the Bowman Hotel Corporation was not in compliance with the statute of frauds of the State of New York and hence was null and void and that for this reason the Bowman Hotel Corporation is not entitled to include the value of the leasehold and building agreement in its invested capital, nor is it entitled to take deduction in the taxable years for exhaustion thereof. This Board has had that question before it in several cases and has decided it contrary to the contention made by respondent. *Joseph S. Finch & Co.*, 23 B. T. A. 1152; *The Hub, Inc.*, 3 B. T. A. 1259. But respondent contends that even if the leasehold and building agreement did have the value which petitioner claims, and that even if the purported transfer of them was not void under the statute of frauds of the State of New York, nevertheless, John McE. Bowman, who was the real party in interest in effecting the purported transfer, was a director and general officer of the corporation, as well as a promoter, and that he occupied a fiduciary relation

to the corporation and can not profit from any contract to which the corporation is a party. Any profit made in such a transaction would inure to the benefit of the corporation and could not be made the basis of paid-in capital or invested capital of the corporation for the purpose of determining the excess-profits credit of the corporation and could not be made the basis of deduction for the exhaustion of the cost of a leasehold used in petitioner's trade or business. In discussing this question raised by the respondent at the hearing and in his brief, it should be understood at the outset that Holland B. Judkins was a mere dummy for Bowman. He had no financial interest of any kind in the transactions. So in deciding this question we must regard the transfer by Judkins as one made by Bowman and the issuance of common stock to Judkins as an issue to Bowman, a director of the corporation.

The situation which we have before us is one where Bowman, acting for himself, negotiated a leasehold and building agreement with responsible officials of the New York State Realty & Terminal Company and after the terms of the leasehold and building agreement had been substantially agreed upon orally, he organized a corporation by the name of Bowman Hotel Corporation for the purpose of taking over the leasehold and building agreement and carrying out the plans.

We think a subsequent transfer of the lease and building agreement to the corporation by the holder and owner thereof in exchange for common stock would not be void, even if he is a director of the corporation, providing such transaction is fair and equitable and not tainted with fraud.

In the transactions involved in the instant case we have no evidence of fraud and the transactions seemed to have been fully made known to all the parties concerned, including the directors of the Bowman Hotel Corporation, and, so far as the record before us shows, no complaint has ever been made by any director or stockholder of the Bowman Hotel Corporation. Under these circumstances we think petitioner is entitled to include as a part of its invested capital in the years in question, the actual cash value of the leasehold and building agreement at the time they were received by transfer. We think in so holding we follow our decisions in *Roth Hotel Co.*, 1 B. T. A. 1111; *A. H. Woods Theatre Co.*, 12 B. T. A. 827; *Joseph S. Finch & Co.*, 23 B. T. A. 1152; and cases cited therein.

Petitioner's allowance for exhaustion of the leasehold and building agreement in the respective taxable years involved in this proceeding should be arrived at by taking the cost of the leasehold and building agreement, which we have found to be $1,000,000, and dividing it by 21 years, the term the lease was to run. The two renewal periods provided in the lease should not be considered. They have not been

considered in arriving at the value of the lease and building agreement. Cf. *Bonwit Teller & Co.* v. *Commissioner*, 52 Fed. (2d) 904.

Reviewed by the Board.

> In Docket Nos. 10651 and 28971 further proceedings will be had under Rule 62, or in the absence of such proceedings, judgment will be entered under Rule 50. In the remaining dockets judgment will be entered under Rule 50.

SMITH, dissenting: I dissent from so much of the report as holds that the leasehold and building agreement at the time it was acquired by the petitioner had a fair market value of $1,000,000 and that petitioner is entitled to include said leasehold and building agreement in its invested capital at $1,000,000 and to compute the annual allowance for the exhaustion of the leasehold on that basis.

Much the same question as is here involved was before the Board in *Kleeson Co.*, 6 B. T. A. 1153, affirmed in *Kleeson Co.* v. *Blair*, 28 Fed. (2d) 557. The Board held in that case that the value of the contract paid in to the corporation was not includable in invested capital.

In *La Belle Iron Works* v. *United States*, 256 U. S. 377, the court stated:

It is clear enough that Congress adopted the basis of "invested capital" measured according to actual contributions made for stock or shares and actual accessions in the way of surplus, valuing them according to actual and bona fide transactions and by valuations obtaining at the time of acquisition, not only in order to confine the capital, the income from which was to be in part exempted from the burden of this special tax, to something approximately representative of the risks accepted by the investors in embarking their means in the enterprise, but also in order to adopt tests that would enable returns to be more easily checked by examination of records, and make them less liable to inflation than if a more liberal meaning of "capital and surplus" had been adopted. * * *

In *Kleeson Co.* v. *Blair*, *supra*, the Circuit Court of Appeals for the Fourth Circuit said:

* * * Actual cash value can have no other meaning than the amount of the proceeds of the property when reduced to cash in a bona fide transaction.

In the instant proceeding it appears that the New York State Realty & Terminal Company gave an option to Bowman of a leasehold and building agreement and provided that the same might be assigned to a corporation which would be satisfactory to the New York State Realty & Terminal Company. Bowman assigned the option to the petitioner. He simply acted as agent of the petitioner in negotiating the lease. The report of the Board is to the effect

that the leasehold had an actual cash value of $1,000,000. There is nothing to indicate, however, that either Bowman or the petitioner could have sold the option for $1,000,000 cash. It was not an asset that could be sold. Not one dollar was invested by either Bowman or the petitioner for the option. In my opinion any value which might attach to the leasehold is not includable in the invested capital of the petitioner.

MURDOCK, dissenting: I do not agree with the decision of the jurisdictional question which is involved in these proceedings. The Board has such jurisdiction in cases like these as has been conferred upon it by section 274 of the Revenue Act of 1926, and no more. The pertinent provisions of that section are as follows:

If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this title, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within 60 days after such notice is mailed * * * the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the deficiency.

Notices of deficiencies were mailed to the Bowman Hotel Corporation. The Bowman-Biltmore Hotels Corporation filed the petitions. These were two different corporations under the laws of New York as interpreted by the courts of that State. The first was the taxpayer. The latter was not. Thus we have no jurisdiction. It matters not, so far as our jurisdiction is concerned, that under the laws of the State of New York the latter corporation is the universal successor to the former, is liable for the taxes in question, and alone can sue or be sued on behalf of the former corporation. The fact remains that it is not the former corporation. The provisions of the statute are clear and permit no enlargement through interpretation. Before we have jurisdiction in cases like these Congress must use different words. The present decision is a departure from the strict rule previously adhered to by this Board and it is certainly contrary to the following decisions: *Gideon-Anderson Lumber & Mercantile Co.*, 18 B. T. A. 329; *Pittsburgh and West Virginia Railway Co.*, 22 B. T. A. 876; *Grange National Bank*, 22 B. T. A. 1209. Cf. *Carnation Milk Products Co.*, 20 B. T. A. 627; *Standard Silica Co.*, 22 B. T. A. 97; *Pittsburgh Terminal Coal Corporation*, 23 B. T. A. 248. The liability of the Bowman-Biltmore Hotels Corporation as a transferee is not before us.

I think that the statute relating to net losses was correctly interpreted in a line of cases beginning with *Alabama By-Products Corporation*, 18 B. T. A. 919. See also *Buckie Printers Ink Co.*, 19 B. T. A. 943; *Pittsburgh Gasoline Co.*, 21 B. T. A. 297, appeal dismissed by the Third Circuit on the Commissioner's motion; *Warren-Nash Motor Corporation*, 21 B. T. A. 897; *General Box Corporation*, 22 B. T. A. 725; *Arrow Coal & Ice Co. et al.*, 22 B. T. A. 1341; and

*National Slag Co.* v. *Commissioner*, 47 Fed. (2d) 846, reversing 16 B. T. A. 1310.

MORRIS, LANSDON, MCMAHON, and GOODRICH agree with this dissent.