SKANEATELES PAPER COMPANY, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21561. Promulgated October 24, 1933.

*James P. Quigley, Esq.*, for the petitioner.
*J. H. Yeatman, Esq.*, and *J. A. Lyons, Esq.*, for the respondent.

154

OPINION.

TRAMMELL: The petitioner suggests in its brief that we are without jurisdiction in this case because of certain facts appearing in the record, to which reference will be made *seriatim* hereinbelow. No such question was raised in the pleadings, but since the jurisdiction of this Board is prescribed and limited by the statute, we deem it our duty, in all cases where the essential jurisdictional facts do not clearly appear from the record, to consider and determine first of all whether we do or do not have jurisdiction of the proceeding.

The first question of jurisdiction suggested by the petitioner arises from the following facts: (1) The deficiency notice of September 29, 1926, from which this appeal was taken, was addressed to " Skaneateles Paper Company, Skaneateles, New York," (2) which corporation had been consolidated with two other corporations on or about January 31, 1922, to form the Oswego Falls Corporation, and on that date the component corporations had been dissolved by operation of law, and (3) the petition filed with the Board was signed " Skaneateles Paper Company, By Its Sole Beneficiary Oswego Falls Corporation, of Fulton, New York, By S. C. Stiver, Secretary."

In *Bowman Hotel Corp.*, 24 B.T.A. 1193, precisely the same jurisdictional question, arising from a parallel state of facts, was considered by us and decided in the affirmative. On authority of that decision we hold that, in so far as the point here considered is concerned, we have jurisdiction to redetermine the deficiency involved in the instant case. See also *Oswego Falls Corp.*, 26 B.T.A. 60, and cf. *Burnet* v. *San Joaquin Fruit & Investment Co.*, 52 Fed. (2d) 123, followed by us in *San Joaquin Fruit & Investment Co.*, 28 B.T.A. 395.

The next question suggested by the petitioner touching our jurisdiction of this proceeding is predicated upon the fact that two deficiency notices were mailed to the taxpayer covering the same taxable

year. Under date of December 5, 1925, the respondent mailed a deficiency notice to the taxpayer substantially in the same form as the second deficiency notice dated September 29, 1926, from which the present appeal was filed, and each deficiency notice purported to advise the taxpayer of the respondent's final determination of its tax liability. No appeal was taken from the first deficiency notice, and by letter dated January 12, 1926, the respondent advised the taxpayer as follows:

> Reference is made to your letter dated 11-28-25 requesting that your profits tax for the year 1917 be computed under Sec. 210 of the Revenue Act of 1917.
>
> The provisions of the 60-day letter * * * dated December 5, 1925, may be disregarded.

Under the Revenue Act of 1924, after having sent the taxpayer a deficiency notice, the Commissioner nevertheless had the right, without revoking the first notice, to send a second deficiency notice covering the same taxable year. *J. W. Bowman*, 8 B.T.A. 526. Cf. *Dallas Brass & Copper Co.*, 3 B.T.A. 856; *Gilbert B. Goff*, 18 B.T.A. 283; *Corn Products Refining Co.*, 22 B.T.A. 605. This right was taken away by section 274 (f) of the Revenue Act of 1926 *if the taxpayer appealed to the Board from the first deficiency notice*, and after the enactment of the latter act the Commissioner *in such case* was prohibited from determining any additional deficiency, except that he was authorized to assert a claim for increased deficiency at or prior to the hearing or rehearing before the Board.

In the instant case, the taxpayer did not appeal to the Board from the first deficiency notice, and the respondent, therefore, was not prohibited from sending the second notice under the 1926 act. *Lewis E. Smoot*, 25 B.T.A. 1038. See also *Miami Metals Co.*, 10 B.T.A. 421, and *City Baking Co.*, 10 B.T.A. 593.

As stated in *City Baking Co., supra*, the second deficiency notice constituted respondent's final determination of the petitioner's tax liability, and, having been mailed subsequent to the enactment and in pursuance of the provisions of the Revenue Act of 1926, and an appeal having been filed with the Board within 60 days thereafter, we have jurisdiction to redetermine the deficiency.

The petitioner also questions our jurisdiction in respect to the jeopardy assessment of $25,302.18. The amount was assessed by the respondent on March 14, 1924, and 12 days later the taxpayer filed its claim in abatement. By notice of December 5, 1925, the respondent notified the taxpayer of his determination of a deficiency in the amount of $545.20, which was in addition to the jeopardy assessment of $25,302.18, and in the notice respondent further advised the taxpayer that its claim for abatement of the jeopardy assessment would be rejected in full. Thereafter, in order to give consideration to the taxpayer's request for special assessment of its

profits tax, the respondent on January 12, 1926, advised the taxpayer that the provisions of the notice of December 5, 1925, might be disregarded.

The withdrawal of the deficiency notice applied to the rejection of the claim for abatement of the jeopardy assessment as well as to the determination of the additional deficiency of $545.20. On April 24, 1926, respondent mailed to the taxpayer a 30-day letter advising of the tentative determination of an additional deficiency of $545.20, and in that letter it was further stated that " In accordance with the foregoing conclusions, your claim for the abatement of $25,302.18 will be rejected in full."

The final deficiency notice of September 29, 1926, which is the basis for this appeal, makes specific reference to the letter of April 24, 1926, for further explanation of the deficiency. Thus, the deficiency letter of September 29, 1926, constituted respondent's notice to the taxpayer of the final rejection of its claim in abatement, and in this situation section 283 (e) of the Revenue Act of 1926 confers upon us jurisdiction to redetermine the entire deficiency, including the jeopardy assessment.

However, even if the deficiency notice of September 29, 1926, had made no reference to the final rejection of the claim for abatement of the jeopardy assessment, since our jurisdiction has been invoked to redetermine the additional deficiency of $545.20, we may consider all facts determinative of the petitioner's tax liability for the year 1917, including the redetermination of the jeopardy assessment and any question of limitation properly before us. *Friend M. Aiken*, 10 B.T.A. 553; *Peerless Woolen Mills*, 13 B.T.A. 1119; *Peerless Woolen Mills* v. *Rose*, 28 Fed. (2d) 661; *Melville W. Thompson*, 18 B.T.A. 1192; *Northern Anthracite Coal Co.*, 21 B.T.A. 1116.

The petitioner pleads the statute of limitations in bar of the collection of the jeopardy assessment of $25,302.18, and in bar of both assessment and collection of the additional deficiency of $545.20. This issue is to be determined in the light of the following facts: The taxpayer filed its income and profits tax returns for the year 1917 on March 29, 1918, and the five-year period for assessment and collection, provided in section 250 (d) of the Revenue Act of 1921, expired not later than March 29, 1923. On February 14, 1921, the taxpayer executed a so-called " unlimited waiver " which, under the Commissioner's Mimeograph 3085 of April 11, 1923, expired April 1, 1924. On March 14, 1924, respondent made the jeopardy assessment of $25,302.18, which was within the statutory period for assessment as extended by the waiver. On March 26, 1924, a claim in abatement was filed. On December 9, 1924, the next waiver was filed, which purported to extend the time for both assessment and collection to April 1, 1925, and again on January 26 and November 25,

1925, waivers were executed purporting to extend the period for assessment to December 31, 1926. The deficiency notice appealed from was mailed September 29, 1926.

From the foregoing it is clear that while the amount of $25,302.18 was assessed timely, collection thereof became barred on and after April 1, 1924, and that both assessment and collection of any additional amount became barred on the same date. This situation without change existed on June 2, 1924, the effective date of the Revenue Act of 1924, and continued to exist at least until the execution of the waiver of December 9, 1924. Did the execution of the waiver of December 9, 1924, and the subsequent waivers referred to, serve to revive the right of the respondent to collect the jeopardy assessment and to assess and collect the additional deficiency? This question must be answered in the affirmative only (1) if the waivers were validly executed, and (2) if they were competent to lift the bar of limitation which had theretofore fallen. The petitioner argues that the waivers are invalid and without legal effect for the reason that they were executed for and in behalf of the Skaneateles Paper Co. by the consolidated corporation, petitioner herein, as successor of the original taxpayer, and since the latter corporation was dissolved in 1922, the petitioner was without authority as such successor to execute a waiver for or in its behalf. This contention of the petitioner must be denied on authority of our decision in *Oswego Falls Corp.*, *supra*, where we held that similar waivers were validly executed by this same petitioner; that the consolidated corporation, having been made by statute directly liable for all obligations of its components, was acting for itself as principal and not for another as agent, when it executed the waivers. See 26 B.T.A. at page 66.

The petitioner also urges that collection of the jeopardy assessment of March 14, 1924, in the amount of $25,302.18 was in any event barred on and after April 1, 1924, when the so-called unlimited waivers were held to expire, and that even if the waivers subsequently executed were valid to extend the time within which additional taxes might *thereafter* be assessed and collected, such waivers were not competent to extend the period for collection of a tax *theretofore* assessed, citing *Russell* v. *United States*, 278 U.S. 181.

The *Russell* case did not involve a waiver executed after the applicable period of limitation had run and which purported to revive and extend such period; hence, that decision is not pertinent here, and petitioner's contention on this point, we think, must be rejected. The waiver of December 9, 1924, recited that the taxpayer and the Commissioner " hereby consent to extend the period prescribed by law for a *determination, assessment,* and *collection* of the amount of income, excess-profits or war-profits taxes due under any return made by or on behalf of said taxpayer for the year 1917." It follows that,

since the jeopardy assessment of $25,302.18 concededly represented income and profits taxes due for the year 1917, if said waiver was valid to extend the period for determination and assessment, it was equally valid to extend the period for collection of any such tax due for 1917, whether theretofore or thereafter assessed. While the subsequent waivers of January 26 and November 25, 1925, refer only to "assessment," the term so used must be construed as comprehending the entire procedure necessary to a determination and collection of the tax. *Stange* v. *United States*, 282 U.S. 270.

Petitioner's final argument on the issue of limitations is that since either assessment or collection of the 1917 taxes in question was barred during the period from April 1 to December 9, 1924, the waiver executed on the latter date did not operate to lift the bar, for the reason that on June 2 of that year the Revenue Act of 1924 was enacted, and while section 278 (c) thereof provided for extension of the assessment period by consents in writing between the Commissioner and the taxpayer, this provision was subject to the limitation contained in paragraph (e) of section 278 to the effect that "This section shall not (1) authorize the assessment of a tax or the collection thereof by distraint or by a proceeding in court if at the time of the enactment of this Act such assessment, distraint or proceeding was barred by the period of limitation then in existence, or (2) affect any assessment made, or distraint or proceeding in court begun, before the enactment of this Act."

This point was decided adversely to the petitioner's contention in *McDonnell* v. *United States*, 288 U.S. 420, where it was held that paragraph (e) of section 278 did not constitute a limitation on paragraph (c) thereof, and that a waiver executed subsequent to June 2, 1924, was not invalid because the five-year period for assessment had elapsed before June 2, 1924. On authority of that decision, petitioner's plea of limitations is overruled.

This brings us to a consideration of issues (2) and (3) on the merits. Issue (2) is based upon the petitioner's allegation that in computing the deficiency the respondent erred in failing to include in invested capital at January 1, 1917, any part of the alleged increase of surplus effected on April 30, 1915, through the cancellation of seven promissory notes for $5,000 each, which were executed and delivered to the Oswego Falls Pulp & Paper Co. on February 15, 1914, in connection with the purchase of the Draycott Mill and on April 30, 1915, were canceled, marked "Paid" and returned to petitioner without cost.

Petitioner purchased the Draycott Mill in February 1914 for a total consideration of $87,237.29, consisting of the cancellation of its account receivable against the Oswego Falls Pulp & Paper Co. in the amount of $52,237.29 and said seven promissory notes each for

the sum of $5,000. No payment was ever made on the notes and on April 30, 1915, they were canceled and returned to petitioner under circumstances which clearly amounted to a donation.

The Revenue Act of 1917 defined and limited invested capital, so far as material here, as follows:

SEC. 207. * * * (a) In the case of a corporation * * *: (1) Actual cash paid in, (2) the actual cash value of tangible property paid in other than cash, for stock or shares in such corporation * * *, at the time of such payment * * * and (3) paid in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year: * * *

Admittedly the Draycott Mill was not paid in to the petitioner for shares of its capital stock, and only the amount of $52,237.29 which was actually paid for the property may be included in invested capital, unless the promissory notes in the aggregate amount of $35,000 are shown to have constituted paid-in surplus. By the cancellation of the notes without payment, $35,000 was donated to the petitioner, but such donation did not increase the petitioner's paid-in surplus unless the donor was a stockholder, or unless the cancellation of the notes resulted in the receipt of taxable income by the donee. The record does not disclose facts necessary to enable us to determine either of those questions. We have heretofore held that property donated to a corporation by a nonstockholder does not give rise to paid-in surplus. *A. C. F. Gasoline Co.*, 6 B.T.A. 1337; *Frank Holton & Co.*, 10 B.T.A. 1317; *Watervliet Paper Co.*, 16 B.T.A. 604.

In the deficiency notice the respondent held that the transaction referred to "represented, in effect, nothing more than the transfer of an operating loss from a parent company to a subsidiary, which would indicate that the subsequent cancellation of the notes was merely an adjustment of the selling price of the plant to its true value. It is further held that, under the circumstances, the original entries on your books by which notes payable were debited with $35,000.00 and the plant account credited with a like amount, was correct and that there is no warrant for allowing this item as invested capital within the meaning of the statute and Income Tax Regulations."

The burden is upon the petitioner to show that the respondent's determination is erroneous. This, we think, the petitioner has failed to do. Accordingly, the respondent's action on this issue is approved.

Issue (3) involves the question whether respondent erred in disallowing the entire deduction for depreciation claimed by the petitioner from its gross income for 1917 on that part of the alleged cost of the Draycott Mill represented by the canceled indebtedness of $35,000. On brief the petitioner states that "its claim for deprecia-

tion should be passed over because of the absence of evidence indicative that any depreciation was sustained during the taxable year 1917." Respondent's action on this issue is, therefore, approved.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

MURDOCK dissents.