*Decisions will be entered under Rule 50.*

TURNBULL, INC., TRANSFEREE (FORMERLY J. GORDON TURNBULL, INC.), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1285-62.    Filed June 16, 1964.

---

*Wentworth T. Durant* and *Leslie C. Hackler, Jr.*, for the petitioner.
*Charles B. Sklar*, for the respondent.

### SUPPLEMENTAL OPINION

DAWSON, *Judge:* On December 24, 1963, we filed our Memorandum Findings of Fact and Opinion (T.C. Memo. 1963–335) in this proceeding. Our findings of fact and opinion were later amended in certain respects by our order of February 13, 1964.

On April 2, 1964, the petitioner filed its Motion to Vacate the Trial Court's Opinion and on April 13, 1964, filed its Motion to Amend Petitioner's Motion to Vacate the Trial Court's Opinion. Points and authorities were submitted in support of petitioner's position that the Court erred in holding H. R. Henderson & Co. primarily liable for deficiencies in income tax for the taxable years 1954 and 1955, and that the petitioner, Turnbull, Inc., was liable as a transferee at law for the deficiencies determined against H. R. Henderson & Co.

On April 29, 1964, the Court heard extensive oral arguments on the motions by counsel for both parties and took the matter under advisement.

After carefully considering the various points raised in petitioner's motions, and respondent's memorandum in opposition thereto, we have decided to set out our views in this supplemental opinion.

First, we have concluded that there is no merit to petitioner's argument that the respondent failed to mention *transferee liability at law* in his statutory notice of deficiency or failed to plead it affirmatively

in his answer. The notice of petitioner's liability as transferee, dated January 22, 1962, provides, in part, as follows:

The above-stated amounts represent your liability as transferee of assets of H. R. Henderson & Co., (Dissolved) and affiliate, for the deficiencies in income tax due from that corporation for the taxable years ended December 31, 1954, and December 31, 1955, plus interest as provided by law.

The records of this office indicate that you are the surviving company of a merger agreement with H. R. Henderson & Co.

You have filed with this office an agreement that you are liable as transferee of the assets of H. R. Henderson & Co., and the above amounts represent your liability as transferee of the assets of H. R. Henderson & Co., Pinecrest Drive West, Marshall, Texas.

The affirmative allegations in respondent's answer are sufficient to sustain, along with the evidence adduced, a finding of transferee liability. In paragraph 7 the respondent pleaded the merger agreement, the transfer of assets to petitioner leaving H. R. Henderson & Co. without assets of any value, and the termination of the separate corporate existence of Henderson as a result of the merger. Respondent need not specifically state, as petitioner contends, whether transferee liability is asserted *at law* or *in equity*. *Francis E. Drake*, 30 B.T.A. 475 (1934).

Likewise, the petitioner's statement that the notice failed to assert any *primary* liability is incorrect. Although the notice was issued to Turnbull, Inc., as transferee, it states that H. R. Henderson & Co. is primarily liable for the determined deficiencies. The first sentence thereof reads:

It is determined that there is due from H. R. Henderson & Co., (Dissolved) and affiliated company, income tax deficiencies for the taxable years ended December 31, 1954, and December 31, 1955, in the aggregate amount of $157,-902.49, as shown in the attached statement.

This contention is not new. A similar argument was advanced in petitioner's original brief (pp. 11–12) and in its reply brief (pp. 4–7). In fact, in its original brief (p. 12) petitioner admitted to the extent H. R. Henderson & Co. was primarily liable, the notice asserting transferee liability against Turnbull, Inc., was proper. However, petitioner's present approach is somewhat different. Previously it was contended that J. Gordon Turnbull, Inc., which survived the merger as Turnbull, Inc., was primarily liable because the income in question had been realized by the consolidated group from collections on accounts receivable due J. Gordon Turnbull, Inc. Now petitioner argues that the surviving corporation, Turnbull, Inc., is primarily liable, and in no way secondarily liable, because the statutory merger laws of Texas and Ohio provide that the creditors of the merged corporation *may* prosecute their claims against either the merged corporation or the surviving corporation. See Tex. Bus. Corp. Act Ann. art. 5.06 and Ohio General Corporation Law, Ohio Rev. Code Ann., sec. 1701–83.

Was there a transfer of assets from H. R. Henderson & Co. to the petitioner? We think there was. This is established by two documents in the record. Article XI of the merger agreement provides that all property of each constituent corporation shall vest in the surviving corporation, and that—

The corporate entity and separate existence of H. R. HENDERSON AND COMPANY, except insofar as the same may be continued by Statute, shall cease, and it shall be merged into the Surviving Corporation, in accordance with the provisions of this Joint Plan and Agreement of Merger.

Also, the transferee agreement (Form 2045) provides:

In consideration of the Commissioner of Internal Revenue not issuing a statutory notice of deficiency to and making an assessment against the above-named transferor corporation [H. R. Henderson & Co.], the undersign [Turnbull, Inc.] admits that it is the transferee of assets received from said transferor corporation, and assumes and agrees to pay the amount of any and all Federal income, excess-profits, or profits taxes finally determined or adjudged as due and payable to the above-named transferor corporation for the taxable year (or years) ended 1954, 1955 and 1956, to the extent of its liability at law or in equity, as a transferee within the meaning of Section 6901 of the Internal Revenue Code of 1954 and corresponding provisions of prior internal revenue laws.

Logically there had to have been a transfer. Before the merger H. R. Henderson & Co. owned assets. After the merger these assets were vested in petitioner, the surviving corporation, and Henderson's separate existence ceased. Even if, as petitioner now claims, Henderson retained some type of interest in the assets, the petitioner after the merger had acquired an interest in those assets that it had not enjoyed prior to the merger. In our opinion the vesting of such interest constitutes a transfer, notwithstanding State law, where, as here, it was agreed that there was a transfer of assets to petitioner.

It is obvious that a statutory merger places respondent in a rather difficult position with regard to the issuance of a proper deficiency notice. If he issues the notice to the transferor asserting direct and primary liability, he meets the objection that the corporation is no longer in existence. If a notice is issued to a merged transferor in reliance upon the provisions of statutory merger statutes of the various States, as petitioner now asserts would have been the proper procedure in this case, then respondent is forced to rely on the particular provisions of the law in each State, as well as such peculiar procedural problems as might arise under such law. The risks of misinterpreting the provisions of each State's law and procedure are indeed great, and where the laws of two or more States are involved, as here, problems might arise to invalidate the deficiency notice. On the other hand, if respondent issues a transferee notice, he may face the argument now made by petitioner. To solve his dilemma in this case, the respondent obtained an agreement from petitioner that if respondent would re-

frain from issuing a notice to H. R. Henderson & Co., petitioner would admit it was a transferee of assets of Henderson and assumed and agreed to pay the tax due from Henderson, as a transferee under the provisions of section 6901, I.R.C. 1954. In reliance on this agreement respondent did not issue a deficiency notice to H. R. Henderson & Co.— a notice which could have been issued to Henderson when petitioner agreed that it was a transferee since the statute was still open under consents at that time. If respondent had issued a deficiency notice to Henderson, the factual pattern would have been similar to that present in *Popular Library, Inc.*, 39 T. C. 1092 (1963), and petitioner could have been held primarily liable. Instead, in reliance on the transferee agreement, respondent properly issued a notice of transferee liability to petitioner. We believe petitioner cannot now assert, in good faith, that it is not a transferee, that it is primarily and not secondarily liable, and that there was no transfer of property incident to the merger. To permit this under these circumstances would be to allow petitioner to ignore and avoid its transferee liability as well as abrogate the basic intent and purpose of the State merger statutes, viz, to protect the creditors of the merged corporation and to assist them in collecting their claims.

We are persuaded that the weight of judicial authority supports our finding of transferee liability at law in the instant case. See *West Texas Refining & Development Co.* v. *Commissioner*, 68 F. 2d 77 (C.A. 10, 1933); *Texsun Supply Corporation*, 17 T.C. 433 (1951); *Kaufmann Department Stores Securities Corporation*, 2 T.C. 656 (1943), affd. 144 F. 2d 776 (C.A. 3, 1944); and *Gideon-Anderson Co.*, 20 B.T.A. 106 (1930).

The many cases cited by petitioner are distinguishable. *Bowman Hotel Corporation*, 24 B.T.A. 1193 (1931), and *Skaneateles Paper Co.*, 29 B.T.A. 150 (1933), involved situations where a deficiency notice was issued to a consolidated corporation, and the consolidating corporation filed a petition. New York law had separate and different provisions regarding consolidations and mergers. The cases merely hold that under the New York law tax liability could not be asserted against a consolidated corporation. They do not involve any question of, or any attempt to assert, transferee liability. *Commissioner* v. *Oswego Falls Corporation*, 71 F. 2d 673 (C.A. 2, 1934), is distinguishable, as discussed in the *Texsun Supply Corporation* case, on the ground that there was no definite contractual obligation to pay the taxes of the consolidating corporation involved and no transferee consent (Form 977). *Alaska Salmon Co.*, 39 B.T.A. 455 (1939), held that a surviving corporation may file a petition in response to a deficiency notice issued to a merged corporation. It is not authority for the proposition that, under the facts now before us, a surviving corporation is not liable as a transferee.

None of the other cases cited by petitioner involve any question of transferee liability or jurisdiction of the Court. *Adrian & James, Inc.*, 4 T.C. 708 (1945), and *Koppers Coal Co.*, 6 T.C. 1209 (1946), hold that a consolidating corporation may deduct interest paid by it on tax deficiencies of corporations consolidated with it. *Koppers Co.* v. *United States*, 134 F. Supp. 290 (Ct. Cl. 1955), certiorari denied 353 U.S. 983 (1957), deals with the question of whether a surviving corporation may carry back unused excess profits credits to reduce consolidated excess profits net income of merged corporations. *Stanton Brewery* v. *Commissioner*, 176 F. 2d 573 (C.A. 2, 1949), and *C. and J. Gallo Winery* v. *Commissioner*, 227 F. 2d 699 (C.A. 9, 1955), hold that excess profits tax credits may be carried forward where there is a merger, under the laws of New York and California, respectively. *New Market Manufacturing Co.* v. *United States*, 233 F. 2d 493 (C.A. 1, 1956), certiorari denied 353 U.S. 983 (1957), involved a net operating loss carryback to a prior year of a merged corporation.

Petitioner raises three other points. The first is that the insolvency of H. R. Henderson & Co. is an essential condition to the establishment of the petitioner's transferee liability *at law*. We disagree. Where transferee liability at law is asserted, it is not necessary for the respondent to prove that the transferor was insolvent. See *Coffee Pot Holding Corp.* v. *Commissioner*, 113 F. 2d 415 (C.A. 5, 1940); and *Helvering* v. *Wheeling Mold & Foundry Co.*, 71 F. 2d 749 (C.A. 4, 1934).

Secondly, it is argued that the petitioner did not contract to "assume" or "promise to pay" any liabilities of H. R. Henderson & Co. Although it is true that the word "assumed" does not appear in the merger agreement, there is no substantial difference between an assumption of liabilities by the surviving corporation and an agreement by the survivor that all debts and liabilities of the merged corporation shall "attach" to the survivor as if incurred or contracted by it. Article XI of the merger agreement specifically provides, in pertinent part, as follows:

All rights of creditors and all liens upon the property of any of the constituent corporations shall be preserved unimpaired, and all debts, liabilities and duties of the respective constituent corporations, including liability to dissenting shareholders, shall thenceforth attach to the Surviving Corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it.

Moreover, the transferee agreement (Form 2045) provides that the petitioner "assumes and agrees to pay" the Federal tax liabilities of H. R. Henderson & Co. for the taxable years 1954 through 1956.

Finally, the petitioner contends that the transferee agreement is not binding because it lacks mutuality, having been signed only on behalf of the petitioner. The cases cited by petitioner, *Botany Worsted*

*Mills* v. *United States*, 278 U.S. 282 (1929), and *Joyce* v. *Gentsch*, 141 F. 2d 891 (C.A. 6, 1941), are not in point because they involve final closing agreements, which are specifically required by statute to be signed on behalf of the Secretary or his delegate in order to have any effect. There is no such statutory requirement regarding the transferee agreement (Form 2045). Here the respondent promised, or agreed, not to issue a deficiency notice, or make an assessment against H. R. Henderson & Co., at a time when respondent could have done so; and in return petitioner agreed that it was the transferee of assets of Henderson, and that it assumed and agreed to pay Henderson's tax to the extent of its liability under section 6901. Respondent fulfilled its part of the agreement. It did not issue a notice of deficiency to Henderson. Respondent's forbearance to act when it validly could have done so is sufficient consideration to support petitioner's promises. The agreement is no longer executory; it is executed and complete. Petitioner has received performance from respondent and cannot now properly repudiate the agreement.

Petitioner's motion to vacate the opinion filed on December 24, 1963, will be denied and an appropriate order entered.